**In re the Marriage of Laurel Ann MARCH, etc., petitioner, Appellant,**

v.

**James L. CROCKARELL, Respondent.**

**Nos. C8-83-1881, C4-84-57 and C9-84-233.**

Court of Appeals of Minnesota.

Aug. 14, 1984.

William Haugh, Jr., St. Paul, for appellant.

Thomas Kayser, Minneapolis, for respondent.

Heard, considered, and decided by SEDGWICK, P.J., NIERENGARTEN, J., and POPOVICH, C.J.

## OPINION

SEDGWICK, Presiding Judge.

This is a consolidated appeal from a marriage dissolution judgment and the denial of a motion for amended findings or a new trial.

## FACTS

Laurel and James Crockarell were married in 1975. They have two children, 7 and 4. Appellant, Laurel Ann March, 37, a licensed attorney, is a self-employed real estate broker and property manager. Respondent, James L. Crockarell, 40, is also a self-employed real estate broker-property manager.

After three years of marriage, both parties quit their salaried jobs to go into business together buying, selling and managing property. They pooled their assets and in the last six years purchased contracts for deed on ten pieces of property, the value and distribution of which are at issue here.

In November 1980, appellant filed a petition for divorce. A temporary order for relief required respondent to pay appellant $400 per month for child support. Another temporary order required respondent to collect rents from the parties' property, make all the payments respecting these properties, and deposit the proceeds in a joint account. The order allowed him 5% of the rental proceeds as a management fee.

During the two years between the issuance of the temporary order for child support and the time of trial appellant brought three motions to compel respondent to pay child support. Additional motions were brought to enforce respondent's court-imposed accounting obligations. At the time of trial respondent was allegedly $5,443 in arrears on child support obligations. Appellant testified she was forced to borrow more than $100,000 from family and banks to cover her and her children's living expenses during the pendency of this action.

It took 3½ years to get this case to trial. There were numerous continuances due to separate litigation pending in other courts regarding some of the parties' other property.

At the beginning of trial the parties stipulated to the distribution of certain property. Respondent claims that appellant agreed with the court's decision to value the 10 contracts for deed at face value,

rather than on a present value basis, and that appellant agreed to take whichever five contracts the court decided to award to her.

The trial record does not substantiate this claim. With respect to the contracts it provides:

> Mr. Haugh: Then the next item we have dealt with are the contracts for deed. I believe there are ten contracts for deed and those will be divided between the parties in a manner as this Court sees fit. Court: I tell you now, the petitioner will receive A and the respondent will receive B in the list that you have got. That is less than a $4 difference between the two of them and at $403,000 is about as close as I think anybody can get.

Later Mr. Haugh asked the court if its decision on the division of the contracts for deed was irreversible. The court said "It is. That is not something I am going to take up any further."

The Court then asked petitioner if she understood and agreed with the stipulation as stated on record. Her attorney said,

> she doesn't agree with that portion (regarding the division of the contracts for deed) but the rest of the proposal that we have read into the record she understands, and as I understand, she agrees on the compromise on the issues covered.

The issues covered at that point included the distribution of homestead properties, with the exception of the issue of the second mortgage on the homestead awarded to petitioner; distribution of investment property not disputed; distribution of respondent's nonmarital property; and resolution of the child custody and visitation issue.

Regarding the issue of child support, appellant's attorney noted that the amount of child support arrearages was $5,443 dating back to March 14, 1981. The court said this would be considered as part of the restitution claims the parties had against each other. Mr. Haugh then said "Okay, I will leave that off for the time being then, Your Honor."

## ISSUES

1. Did the trial court abuse its discretion in dividing the contracts for deed between the parties based on their face value instead of considering expert evidence on the present values of the contracts?

2. Did the trial court err in considering the child support arrearages as part of the restitution claims the parties had against each other?

3. Did the trial court abuse its discretion in reducing the amount of attorney fees awarded petitioner?

4. Did the trial court abuse its discretion in failing to distribute equally the value of stock certificates petitioner claimed as her non-marital property?

5. Did the trial court abuse its discretion in refusing to amend the findings of fact to include a "sunset clause" so that the balance of a jointly held second mortgage on appellant's homestead would not indefinitely restrain the alienability of her homestead property?

6. Did the trial court abuse its discretion in failing to award petitioner restitution for interest paid on a joint debt to preserve marital assets pending the outcome of this action?

## ANALYSIS

1. Respondent claims that appellant agreed to have the contracts valued on their face value before trial, and agreed to accept the contracts in either group; that it was only after she was assigned the contracts in the group respondent got that she denied agreeing to such a distribution. Appellant claims she never agreed to accept the group of contracts the judge awarded her. There is no record of any pretrial agreement.

However, during trial she specifically said she did not agree with the court's "irrevocable" decision not to consider the present value of the properties.

Whether this decision constitutes an abuse of discretion is an issue of first impression to Minnesota Courts.

■ Equity dictates that the contracts for deed be valued on the basis of their present cash value because everything else in the marital estate was valued on that basis at the time of the final dissolution. There is nothing in the record showing that valuing the contracts at their present cash value would be inherently unfair.

These contracts were purchased at different times and have different equities. Face value is not fair market value and there is no valid reason for valuing this asset differently. Presumably respondent agrees or he would have exchanged his list for hers. Since the present market value of the properties is different than face value the decision to use face value is unfair and an abuse of discretion.

2. Appellant claims the trial court erred in considering the temporary child support arrearages as part of the restitution claims of the parties and determining the claims washed each other out.

Respondent claims that this issue is not before this court because appellant failed to raise the issue in her motion for amended findings. This is not true.

Minn.Stat. § 518.64 (1983) gives a trial judge the right to consider child support arrearages as part of the claims the parties have against each other. This statute provides that support obligations may be modified upon a showing of "substantially increased or decreased need of a party." Here, the court determined the needs of appellant had substantially changed at the time of the final dissolution. The court concluded that appellant was receiving enough income through the satisfaction of her other claims against respondent that when satisfying his claims against her, the child support issue was a wash.

■ This conclusion does not appear to be an abuse of discretion by the trial court considering the complexity of this case and the fact that the child support ordered in the final decree exceeds the amount the parties agreed to before trial.

3. Appellant next claims that the trial court abused its discretion in reducing the amount of attorney fees awarded to her in the final decree.

■ The issue of attorney fees in dissolution cases rests almost entirely in the discretion of the trial court. This decision should not be overturned absent a clear abuse of discretion. *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.Ct.App.1984).

■ In *Deliduka* this court upheld a trial court's order that each party pay his or her own fees. The only significant assets the Delidukas had were their home and a military pension. Here, each party has substantial real estate investments as well as a separate home and valuable personal items.

The Minnesota decisions where the reviewing court found an abuse of discretion regarding attorney fees and remanded on this issue are clearly distinguishable. In *Borchert v. Borchert,* 279 Minn. 16, 154 N.W.2d 902 (1967), this issue was remanded because there was little, if any, evidence as to the value of services performed by the wife's attorney, yet the trial court awarded her $6,000 in attorney fees. In *Eizenhoefer v. Eizenhoefer,* 292 Minn. 442, 193 N.W.2d 628 (1972), this issue was remanded because the attorney fees awarded the wife would have for practical purposes rendered the husband insolvent. The issue was remanded solely for reconsideration of the manner in which the attorney fees should be paid, not for reconsideration of the amount awarded.

We affirm the trial court's award of attorney fees.

4. Respondent claims the trial court abused its discretion in failing to distribute equally the value of appellant's non-marital property.

Appellant inherited $338,345 worth of stock and received gifts worth $183,291 before she married. At the time of her marriage she placed her stock certificates and other securities in a joint safety deposit box. From time to time she cashed in some of these non-marital assets and placed the proceeds from their sale in the

parties' joint account to be used to purchase investment real estate.

Minn.Stat. § 518.54, subd. 5 (1982), provides that all property acquired during the existence of a marriage is presumed to be marital regardless of whether the title is held individually or jointly. It further provides that the presumption is overcome by a showing that the property is nonmarital property.

"Nonmarital property" means property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);

(d) is acquired by a spouse after a decree of legal separation; or

(e) is excluded by a valid antenuptial contract.

*Id.*

■ Appellant's securities are clearly within the meaning of this statute. However, respondent claims that he is entitled to half the value of the stock remaining at the time of final dissolution because she placed the stocks which were registered in her name in their jointly owned safety deposit box. He argues this conduct changed the nature of the assets from non-marital to marital.

This argument disregards *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981). In *Schmitz*, the parties acquired a home by using $8,000 of the husband's nonmarital assets. At the time of their divorce, the trial court apportioned the increase in equity between the marital and nonmarital interests, and this division was upheld on appeal. Additionally, the wife had inherited money with which she purchased municipal bonds and established a savings account. These were clearly found to be nonmarital assets by the Supreme Court.

5. Appellant claims the trial court abused its discretion in refusing to amend the findings of fact to include a "sunset clause" so that the balance of a jointly held second mortgage on her homestead would not indefinitely restrain the alienability of the property.

At trial appellant agreed to the division of the homesteads with their attendant debts. She agreed that one-half of the second mortgage on her home was to be satisfied only after a receiver sells four other pieces of property the couple owns. The other half of the second mortgage she agreed was her responsibility. She did not request a "sunset clause" until the post-trial motion.

■ Contrary to respondent's claim, this issue is reviewable by this court because of appellant's post-trial motion for a new trial.

■ Although the Supreme Court looks with favor upon stipulations, particularly in divorce proceedings, *Kaiser v. Kaiser*, 290 Minn. 173, 186 N.W.2d 678 (1971), the court has held that wherever possible, trial courts should determine the issue of division of property with finality. *Wos v. Wos*, 291 Minn. 404, 191 N.W.2d 829 (1971).

In *Wos* the divorce decree provided that the parties' homestead was to go to the husband providing he pay one half of her interest in the place in cash to her by a particular date. The balance would remain as a lien against the home with no date set as to when that lien must be satisfied and no interest accruing on it.

The court found that even though the wife had a security interest for the balance of her award in the form of a lien, she had no legal right to ever require payment, and she may have to reconcile herself to the fact that only her heirs will receive the balance. Additionally, the court found that because the obligation bears no interest, this fact would certainly not encourage payment during her lifetime.

■ This is an analogous situation. Here, although the husband has an obligation to pay one half the second mortgage on the wife's house, she has no legal right

to require payment until he agrees to sell certain other properties they jointly own. As long as he withholds his consent to sell these properties the alienability of her house is tied up. Additionally, the fact that his obligation bears no interest would not encourage payment.

Therefore, we remand this issue for reconsideration and redetermination upon the existing record and upon such further testimony as the parties, with the permission of the court, may submit. The status of respondent's obligation on the second mortgage on appellant's homestead should be clarified to make it more definite.

6. Lastly, appellant claims that the trial court abused its discretion in failing to award her restitution for interest paid on a joint debt to preserve marital assets pending the outcome of this action.

 In dissolution actions, the trial court is accorded broad discretion in dividing property and its decision will not be overturned by this court, except for a clear abuse of discretion. *Kelly v. Kelly*, 348 N.W.2d 397 (Minn.Ct.App.1984), *citing Reck v. Reck*, 346 N.W.2d 675 (Minn.Ct. App.1984).

Under Minn.Stat. 518.58 (1982), the trial court must make a just and equitable disposition of the property. There is no requirement that the awards be equal. *Ruzic v. Ruzic*, 281 N.W.2d 502 (Minn. 1979).

The restitution claims in this case are complex and intertwined. There is conflicting testimony regarding the purpose and nature of certain loans and expenditures. The trial court found that the parties restitution claims canceled each other out.

"In a divorce action the trial court has the responsibility of finding the facts and resolving the conflicts in the evidence, and findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole." *Kucera v. Kucera*, 275 Minn. 252, 146 N.W.2d 181 (1966).

Applying this principle and the applicable statutes we do not find the trial court abused its discretion.

### DECISION

We affirm the trial court's decisions regarding child support arrearages, attorney fees, the distribution of appellant's nonmarital assets, and appellant's other restitution claims. We reverse and remand the trial court's decision regarding the exclusion of the sunset clause, and the valuation of contracts for deed. We instruct the trial court to consider the present values of the contracts for deed and clarify with finality respondent's obligation for the second mortgage on appellant's home.