**In re the Marriage of Edward W. VARNER, petitioner, Appellant,**

v.

**Shirley M. VARNER, Respondent.**

**No. CX–86–892.**

Court of Appeals of Minnesota.

Jan. 27, 1987.

Jack S. Jaycox, Constantine J. Gekas, Bloomington, for appellant.

John H. Erickson, Brainerd, for respondent.

Heard, considered, and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

RANDALL, Judge.

## OPINION

This is an appeal from an April 18, 1986, order amending findings in a judgment and decree of dissolution. The original decree was entered January 14, 1985. The sole issue tried was the division of marital property. After trial, but before the court entered its order, appellant moved for maintenance covering the period from October 1985 until entry of the judgment and decree, or, in the alternative, for the court to award him the proceeds, for the same time period, of eight contracts for deed held by the parties.

The judgment and decree entered January 14, 1985, divided the marital property and denied both parties maintenance. On January 28, 1985, appellant moved for a number of amended findings on the grounds of newly discovered evidence. The court amended some of the findings, but left the property award as it was in the decree. Edward Varner appeals.

After the appeal was filed, respondent moved this court to strike two documents, and all references thereto, from appellant's brief and appendix. The documents were appellant's September 1985 deposition and a vocational rehabilitation specialist's report prepared after trial. By special term order this court struck the vocational rehabilitation specialist's report and all refer-ences thereto in appellant's brief. The special term panel referred consideration of the deposition to this panel. We affirm.

## FACTS

Edward and Shirley Varner were originally married in 1952. They divorced in 1965, and remarried in 1979. They have no minor children.

Appellant, Edward Varner, is fifty-six years old and has been self employed as a skilled laborer throughout most of the marriage. He suffers from recurrent back problems. He is currently unemployed, but receives no unemployment compensation, social security, or disability payments. Since 1977, he has been self employed, clearing and improving several lakeshore lots purchased by the parties and sold under contracts for deed. His income consists of payments on these contracts.

At trial appellant offered medical records as evidence of his back injury. Appellant has undergone therapy for his back over the past several years. The most recent record, July 22, 1985, shows appellant suffered a recurrence of acute lower back pain when he lifted his boat to drain it of water. A May 29, 1985, entry states that he believed his back pain was brought on partially by the stress of the divorce. The trial court found no evidence that appellant has tried to find work in any other area of employment in which his back problem would not interfere.

Respondent is fifty-one years old and currently lives in California. She is employed as a secretary and nets approximately $1100 per month.

The court found appellant's reasonable monthly living expenses to be $860. His monthly income, derived from the contracts for deed, is $1000. The court found respondent's reasonable monthly expenses to be $1215.

The parties are vendors of eight contracts for deed for lakeshore property located in Varner's Subdivision in the City of Emily in Crow Wing County. The principal

owed and monthly payments received by the parties are as follows:

| Lot | Principal | Monthly Payment |
|-----|-----------|-----------------|
| Nicoletti | $16,759.05 | $350 |
| Kudrle | 18,253.16 | 240 |
| Jelen | 16,341.69 | 225 |
| Fransen | 15,804.22 | 200 |
| Raines | 15,744.49 | 190 |
| Mark (Lot C) | 15,516.13 | 200 |
| Mark (Lot D) | 15,516.13 | 200 |
| Stieve | 16,040.82 | 250 |

To arrive at the present value of the contracts, the trial court discounted each contract by forty percent. At the time of trial, the court and the parties knew Discount Finance, Inc. had offered to purchase the Kudrle and Nicoletti contracts at a forty percent discount. Shortly before trial, the Nicolettis informed appellant and respondent that they were planning to pay their contract off[1] shortly. The parties apparently did not inform the trial court of this development.

Five of the contracts (the Fransen, Raines, Mark Lots C and D, and Stieve) were encumbered by obligations that the vendors

> maintain [the] subdivision road until owners desire changes be made on such. Seller will put in driveway and complete and remove trees and stumps for building site and view of lake as necessary.

Appellant had performed similar work on other lots previously sold by the parties, and had been performing the work on the eight lots at the time of trial. The court found appellant believed that this contract term required him to move the driveway on the Fransen lot, remove 100 trees on the Raines lot, remove trees on the Marks' Lot C, remove trees and finish the driveway on the Marks' Lot D, and remove trees and move the driveway on the Stieve lot.

The court found appellant had been doing the work on the lots prior to trial and was capable of continuing to do the work. Appellant testified that the cost of hiring someone to remove the trees and work on

the driveway was $10,000, and if he were to do the work himself, $5000.

The City of Emily, where Varner's Subdivision is located, apparently refuses to maintain the subdivision road built by appellant unless appellant widens the road, places on it four inches of class five gravel, and clears trees from the right of way. Appellant presented a $17,600 estimate from Anderson Brothers Construction for grading the road and for the class five gravel. Appellant testified that it would cost an additional $9000 to complete the road work over and above the Anderson estimate. The court rejected the Anderson Brothers estimate, finding it was not credible because it was the only estimate appellant offered. The court rejected appellant's other estimated figures, finding they provided insufficient evidence of the true cost to complete the road.

The court awarded respondent the vendors' interest in the Nicoletti, Kudrle, and Jelen contracts. None of these contracts are encumbered with provisions. The court awarded appellant the five contracts encumbered by the provisions. The court failed to award an easement for the access roadway to the five encumbered lots. On appeal, respondent agreed to quitclaim to appellant her interest in the easement. Thus, the easement is no longer at issue.

Prior to trial, appellant liquidated $13,000 in certificates of deposit and $4000 in an individual retirement account (IRA). These were marital assets. The court found he spent $5500 to repair two crawler tractors, $500 on abstracts for the eight lots in Varner's subdivision, $2600 on the Willenbring lot, $3600 for personal living expenses, and $3200 for food and personal expenses. The court found that appellant received the benefit of $14,800 of the total $17,000 proceeds from the certificates of deposit and IRA.

The court awarded appellant the parties' unencumbered $70,000 homestead, subject to respondent's lien of $42,500 at eight percent interest, payable no later than Jan-

---

**1.** If the Nicolettis were to pay the contract for deed off, respondent would receive the full amount rather than the figure the court assumed of the payoff minus forty percent.

uary 31, 1991. The court awarded respondent the parties vendors' interest in a contract for deed for property in Arizona sold to the Willenbrings. The balance due on the Willenbring contract is $7825 and payments are $100 per month. The court awarded each party personal property and bank accounts in his or her possession, and made other dispositions not germane to this appeal. The court awarded appellant a total of $109,300, and respondent a total of $93,485, in marital assets. It noted, in a memorandum accompanying the judgment and decree, that appellant was awarded more property than respondent to compensate him for work he was required to do under the terms of the contracts for deed awarded him.

After the judgment and decree was entered, the Nicoletti contract was paid in full by payment of $16,022.39. In a post-trial motion, appellant moved the court to reopen the decree, alleging newly discovered evidence. He also asked the court to completely revise the property division and to award him rehabilitative maintenance. He asked the court to discount the value of the homestead by forty percent, claiming that due to depressed market conditions and the condition of the homestead, it would have to be sold on a contract for deed. He sought to reopen valuation of the Nicoletti contract so that he could share in the "extra" money, approximately $6500, resulting from the full payoff. Appellant moved to amend the award of all eight contracts for deed to give both parties an undivided one-half of the vendors' interest until the work required under the five contracts was completed. He also moved the court to adopt the cost estimates he presented at trial.

The court amended the findings to award all proceeds from the Nicoletti contract to respondent. It confirmed its refusal to accept appellant's estimates for the work on the lakeshore lots based on lack of specificity and lack of foundation, and confirmed its refusal to adopt the Anderson Brothers estimate. The court found that appellant was capable of performing the necessary work on the lakeshore property, and found appellant had presented no newly discovered evidence to justify disturbing the property award.

## ISSUES

1. Did the trial court err by refusing to award appellant maintenance or reserve jurisdiction over maintenance?

2. Did the trial court err by refusing to adopt the estimate appellant presented as evidence of the cost of road improvements?

3. Did the trial court err in its valuation and distribution of marital property?

## ANALYSIS

### I.

**Maintenance**

Appellant argues that under our holding in *Van de Loo v. Van de Loo*, 346 N.W.2d 173 (Minn.Ct.App.1984), the trial court erred by failing to award or reserve maintenance because he has limited earning capacity due to his back injury. We will not review this issue on the merits because appellant did not present it to the trial court. *See Channel 10, Inc. v. Independent School District No. 709*, 298 Minn. 306, 327, 215 N.W.2d 814, 828 (1974).

In his summons and petition for dissolution, appellant's prayer for relief requested, "[t]hat neither party be awarded maintenance." The issue of maintenance was not tried. In his first post-trial motion, appellant moved for maintenance only for the period from October 1985 to entry of the judgment and decree. In his second post-trial motion, appellant moved for rehabilitative maintenance based on his back condition. He also moved for a reservation of maintenance.

These post-trial motions were untimely. Appellant did not plead the issues of maintenance or reservation of maintenance in his summons and petition. During trial he did not advise the court or respondent that he wished to raise the issues. Thus, the issues were neither pleaded nor litigated by consent. The issues were not tried and respondent was afforded no opportunity to

cross-examine appellant or offer evidence to refute his claim for maintenance.

On appeal, appellant attempted to present to this court deposition evidence to support his untimely maintenance claim. He did not produce this deposition at trial, nor was it part of the trial court file. Generally our rules prohibit consideration of evidence not presented to the trial court. *See* Minn.R.Civ.App.P. 110.01; *Ronay v. Ronay,* 369 N.W.2d 6, 10 (Minn.Ct.App. 1985). We will not sit as a factfinder. *Kenville v. Kenville,* 385 N.W.2d 398, 402 (Minn.Ct.App.1986). While the facts in this case may have justified a reservation of maintenance, the matter was untimely put in issue and is not properly before us on appeal.

## II.

**Evidentiary Issue**

■ At trial appellant submitted a repair estimate by Anderson Brothers Construction. Prior to trial respondent stipulated to admission of the estimate, although not to its accuracy. While the trial court admitted the estimate into evidence, it refused to adopt the estimate figure, finding:

> [T]hat [appellant] got only one quote for the Class 5 work and that was from a large corporate highway contractor located approximately 50 miles from the work site; that [appellant] has demonstrated through his hiring of a part-time surveyor as opposed to an engineering company and doing his own work that [appellant] can get the work done at the lowest possible cost; that there is insufficient evidence to establish the true cost * * * to apply the Class 5 to the roads and grade them.

Appellant moved, post-trial, for reconsideration of the Anderson Brothers estimate. The court denied his motion, stating:

> That the cost to complete work under the contract for deed obligations on properties sold by the parties were the unsubstantiated estimates of [appellant]; that there was no itemization or breakdown of the costs of the completion of said

work, that there was no foundation for said estimates, that said estimates are rejected by the court as being without basis and evidence; that the obligation to complete said work was incurred by the actions of petitioner, who was solely responsible for drafting the contracts for deed wherein said obligations were incurred.

■ Appellant argues that because the Anderson Brothers estimate was the only estimate offered, the court was required not only to admit it into evidence, but also to adopt it. Appellant concedes that the parties stipulated only to admissibility and not to the accuracy of the figures nor to their acceptability. The court has broad discretion to admit evidence relative to a marital property division. *See Andersen v. Andersen,* 374 N.W.2d 499, 502 (Minn.Ct.App.1985). The finder of fact is not required to accept even uncontradicted testimony if the surrounding facts and circumstances afford reasonable grounds for doubting its credibility. *See Waite v. American Family Mutual Insurance Co.,* 352 N.W.2d 19, 22 (Minn.1984).

When the court divided the marital property, it acknowledged that appellant would incur some cost by complying with the contract for deed terms. Expressly taking that cost into consideration, the court awarded appellant more property than it awarded respondent. We hold that the trial court was acting within its discretion when it rejected the Anderson Brothers' figures and appellant's figures.

## III.

**Property Division**

Appellant raises numerous objections to the property division. At the outset, we note that the district court is given broad discretion in property divisions and we will not reverse absent an abuse of that discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977); *Bollenbach v. Bollenbach,* 285 Minn. 418, 426, 175 N.W.2d 148, 154 (1970). The court must make a just and

equitable division of the marital property. Minn.Stat. § 518.58 (1984).

■ Appellant claims the overall property division was inequitable. Although the court awarded him $109,300 and respondent $93,485, appellant argues that the court's failure to offset the property settlement by the amount he claimed the lakeshore property work would cost constituted an abuse of discretion. We do not agree. While the court rejected both the Anderson Brothers estimate and appellant's estimate for the remainder of the work, it compensated appellant by giving him a larger share of the property settlement.

After trial appellant approached the five vendees of the contracts awarded to him and attempted to negotiate a reduction in each contract principal in exchange for the vendees' waiver of the contract provisions requiring maintenance and repair. He claims that the present value of these contracts is "vulnerable" due to the clauses. In the event his back condition worsens, he fears he may become physically and financially unable to do the work. He argues that if he accepts the lesser payments he has negotiated, the property settlement will favor respondent.

Whatever transactions appellant had with the contract vendees *after* trial are not before this court on appeal. The property settlement reflects the conditions as they existed at the time of trial. The court reviewed evidence on appellant's health, but also noted that appellant had been performing all of the work on the lakeshore lots up until the time of trial and had offered no evidence that he was unable to continue performing the work.

Appellant argues that because the parties had a long-term marriage, the court abused its discretion by not making an equal division of the property. He argues that, if Anderson Brothers perform the road work and if he incurs the balance of estimated expenses for clearing the land and finishing the driveways, he will actually receive $22,000 less than respondent. The logic of his argument depends on the court's acceptance of both the Anderson

Brothers estimate and appellant's estimates. We have held that the court did not err by refusing to adopt these figures. Appellant's argument is speculative.

■ While we agree that it is desirable for parties of a long term marriage to receive equal amounts of marital property, a mathematically equal division is never mandated by law. *Johns v. Johns*, 354 N.W.2d 564, 566 (Minn.Ct.App.1984). The division need only be just and equitable.

Appellant argues that the court erred by refusing to value marital property in respondent's possession. The court valued marital property in appellant's possession at $16,750. The court awarded respondent the marital property in her possession but found "there is insufficient evidentiary basis to determine the current fair market value of the marital property possessed by respondent." We hold this ruling was not an abuse of discretion.

Appellant claims the court erred when it charged him with receiving the benefit of $14,800 of the $17,000 in marital assets he liquidated during the parties' separation. He argues that since some of the money was used for his living expenses, the court abused its discretion by counting that amount in the property division. We hold this finding is not an abuse of discretion.

Appellant raises an issue regarding the proceeds from the Nicoletti contract for deed. Both parties knew at trial that the contract could be paid off shortly after trial. Even with that knowledge, appellant did not object at trial to discounting the vendors' interest. We cannot say that respondent's receipt of an additional $6000 from the Nicoletti contract is sufficient to necessitate a new trial. The trial court did not err by denying appellant's motion for a new trial.

■ Finally, appellant claims that, due to a depressed market and to the poor condition of the homestead, the homestead will have to be sold on a contract for deed. Appellant first made this claim in his post-trial motion. He argues the trial court

erred by failing to discount the value by forty percent under the holding of *March v. Crockarell*, 354 N.W.2d 42, 46 (Minn.Ct. App.1984) *pet. for rev. denied* (Minn. January 10, 1985). *March* holds that contracts for deed should be valued at their present cash value, rather than their face value. *Id. March* does not hold that a trial court must value a homestead as if it were to be sold by a contract for deed. Even if appellant had timely raised this issue, and he did not, his contention, at this point in time, that the house can only be sold on a contract for deed is speculative and does not necessitate our disturbing the property award.

Viewing the property division in its totality, we hold that the court made an equitable division and did not abuse its discretion.

### DECISION

We affirm the trial court's division of marital property and its evidentiary rulings. The issue of maintenance was untimely raised and thus will not be reviewed on appeal. The deposition and vocational rehabilitation expert's report, because not presented at trial, are not reviewable on appeal. Respondent has agreed to quitclaim all her interest in the easement property to appellant, and that agreement becomes part of our holding. It is unnecessary to remand this matter for distribution of the easement to appellant providing respondent signs the necessary documents immediately.

Affirmed.