*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1256**

In re the Marriage of:

Tonya M. Keim,
Respondent,

vs.

Jeremy R. Keim,
Appellant,

County of Fillmore,
Respondent.

**Filed June 10, 2024
Reversed and remanded
Cochran, Judge**

Fillmore County District Court
File No. 23-FA-21-288

David L. Liebow, James A. Godwin, Godwin Dold, Rochester, Minnesota (for respondent
Tonya M. Keim)

Amber Lamers, Dittrich & Lamers, P.A., Rochester, Minnesota (for appellant)

Brett Corson, Fillmore County Attorney, Marla J. Stanton, Assistant County Attorney,
Preston, Minnesota (for respondent County)

        Considered and decided by Cochran, Presiding Judge; Ede, Judge; and Smith, John,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**COCHRAN**, Judge

In this appeal from a child-support magistrate's order establishing child support, appellant-father argues that the magistrate erred when calculating his income and by applying the 2022 child-support guidelines to determine his child-support obligation. Because we agree that the magistrate erred when calculating father's income and the 2023 child-support guidelines apply, we reverse and remand for recalculation of the parties' child-support obligations under the 2023 guidelines.

## FACTS

Appellant Jeremy R. Keim (father) and respondent Tonya M. Keim (mother) married in 2008 and have four minor children. In 2021, mother petitioned for dissolution. The parties reached a stipulated agreement for dissolution covering all issues except child support. The district court entered a judgment and decree based on the parties' agreement, providing for joint physical custody and equal parenting time.

Mother and father both moved to establish child support. Mother reported a monthly income of $5,998.42. Father's affidavit stated that he is a self-employed farmer; that his income is "well below the poverty guideline," with annual income of $1,993 in 2021 and $3,722 in 2022; and that his accountant would "testify in detail about [his] ordinary and necessary business expenses." Father's affidavit alternatively proposed a monthly potential income of $1,834 based on minimum wage.

In May 2023, a child-support magistrate held a hearing. The sole contested issue was father's income. Mother and father introduced financial documents, including 2021

and 2022 joint tax returns, balance sheets summarizing father's net worth, and father's monthly budget. Father also testified on his own behalf and presented testimony from his accountant. Father testified that his business—the farm operation—is a sole proprietorship and that he uses a single line of credit to pay for both his personal expenses and his farm-operation expenses. Father stated that he did not believe that any of the reported expenses for his farm operation were personal. Father acknowledged that he had not provided the magistrate with any of the documents that were used to prepare his tax returns.

Father's accountant testified about father's taxable income. The accountant initially testified that the depreciation expenses claimed for the farm operation did not include any accelerated depreciation. Later, the accountant acknowledged that the deduction did include accelerated depreciation and informed the magistrate that she could provide what portion of the claimed depreciation expense was accelerated. The accountant also testified that certain legal and appraisal fees related to the dissolution had been claimed as business expenses for the farm operation. The accountant testified that all of father's other claimed expenses were business expenses. The accountant testified that she relied on information provided by father when reporting which expenses were personal and which expenses were for the farm operation.

Following the hearing, father filed a supplemental declaration from the accountant with revised depreciation schedules and an updated calculation of depreciation. Father also filed a letter calculating his average gross monthly income as $3,197. Mother filed a letter asserting that the record supports a finding that father's monthly income is $81,469.60, after disallowing certain expenses claimed on his tax returns.

In her June 26, 2023 order, the magistrate stated that the testimony from father and his accountant was "rife with contradictions, misstatements, omissions, and misinformation" and "established that there was commingling of personal expenses with business expenses, deductions for losses that were incurred many years prior to the business year in question, and inclusion of unknown accelerated depreciation." The magistrate found, based on father's tax returns, that father's gross monthly income is $46,432. The magistrate also found that father's estimated net monthly income is $34,118.90. The magistrate explained she would use the more "conservative [net] monthly income" to calculate child support because "actual income is difficult to decipher." Then, using the 2022 child-support guidelines, the magistrate determined father's child-support obligation is $1,250.

Father appeals.

## DECISION

"On appeal from a [child-support magistrate's] ruling, the standard of review is the same as it would be if the decision had been made by a district court." *Hesse v. Hesse*, 778 N.W.2d 98, 102 (Minn. App. 2009). We review a district court's order setting child support for an abuse of discretion. *Butt v. Schmidt*, 747 N.W.2d 566, 574 (Minn. 2008). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

Under Minnesota law, "child support" refers to the aggregate amount a parent may be ordered to pay the other parent to help provide for the parties' joint children. Minn. Stat. § 518A.26, subd. 20 (2022). Minnesota's child-support guidelines set forth the procedure for calculating a parent's presumptive basic child-support obligation. Minn. Stat. §§ 518A.34 (Supp. 2023), .35 (2022). To determine the amount of that obligation, the first step in the procedure is to determine each parent's gross income. Minn. Stat. §§ 518A.29 (2022), 518A.34(b)(1). "[G]ross income includes any form of periodic payment to an individual, including, but not limited to, salaries, wages, commissions, *self-employment income* under section 518A.30 . . . ." Minn. Stat. § 518A.29(a) (emphasis added). Self-employment income is "defined as gross receipts minus costs of goods sold minus ordinary and necessary expenses required for . . . business operation." Minn. Stat. § 518A.30 (2022). In applying the self-employment statutory formula,

> the district court must first identify the business's gross receipts, cost of goods sold (if applicable), and ordinary and necessary expenses, and then apply the formula by subtracting the cost of goods sold and ordinary and necessary expenses from the business's gross receipts in order to arrive at the parent's income from . . . operation of a business.

*Haefele v. Haefele*, 837 N.W.2d 703, 711 (Minn. 2013). This court applies a clear-error standard of review to a district court's finding of gross income. *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015), *rev. denied* (Minn. Dec. 15, 2015).

On appeal, father challenges the magistrate's calculations of his income and the use of the 2022 child-support guidelines. We first consider father's challenges related to his income and then the applicable child-support guidelines.

5

**I.** **The magistrate erred in her calculation of father's income for child support.**

"A court's determination of income must be based in fact and will stand unless clearly erroneous." *Id.* (quotations omitted). When reviewing for clear error, we "view the evidence in a light favorable to the findings" and "will not conclude that a factfinder clearly erred unless, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotations omitted). We do not reweigh or reconcile conflicting evidence; rather, we conduct "a review of the record to confirm that evidence exists to support the decision." *Id.* at 222.

Here, the magistrate rejected father's claimed gross monthly income of $3,197 as not credible and instead calculated father's gross monthly income to be $46,432. The magistrate also estimated his net monthly income to be $34,118.90. The magistrate then calculated father's child-support obligation utilizing father's estimated *net* monthly income rather than his *gross* monthly income, even though section 518A.29 requires the use of gross income, because net monthly income was more "conservative." The magistrate also noted that the use of net income, as opposed to gross income, was "immaterial since [father's] income will provide for a cap in support."

Father challenges both the district court's determination of his net monthly income and of his gross monthly income, arguing that neither is supported by the record. We address father's challenges beginning with the magistrate's calculation of his gross monthly income.

6

### A.    The magistrate erred in finding father's gross monthly income.

The magistrate found that father's gross monthly income is $46,432 based on the statutory formulas in sections 518A.29 and 518A.30 and father's tax returns. Father challenges only the magistrate's finding of his self-employment income from the farm operation.[1]

As noted above, self-employment income is determined by finding gross receipts and subtracting the "costs of goods sold" and the "ordinary and necessary expenses" of the business. Minn. Stat. § 518A.30. "Ordinary and necessary expenses" exclude "any other business expenses determined by the court to be inappropriate or excessive for determining gross income for purposes of calculating child support." *Id.* "The person seeking to deduct an expense, including depreciation, has the burden of proving, if challenged, that the expense is ordinary and necessary." *Id.* A finding of fact concerning expenses will not be set aside unless clearly erroneous. *Rutten v. Rutten*, 347 N.W.2d 47, 51 (Minn. 1984).

Father challenges the magistrate's findings that some of his proffered self-employment expenses—telephone expenses, depreciation expenses, hedge-loss expenses, and net operating losses—were inappropriately deducted or excessive for purposes of calculating child support. In short, he argues that the magistrate overstated his income by including the amount of those expenses in his self-employment income. We address each

---

[1] Father does not dispute that the magistrate properly included income from other sources—cattle sales, machinery rentals, and property rental—in his gross income. Father also does not dispute that the magistrate properly excluded certain legal and appraisal expenses from the "ordinary and necessary expenses" of the farm operation. We thus address only the challenged expenses.

challenged finding in turn, concluding that there is merit only as to father's argument regarding net operating losses.

*Telephone Expenses*

First, father argues that the magistrate overstated his self-employment income by disallowing a portion of his claimed telephone expenses. The magistrate disallowed one-half of the claimed telephone expenses based on her findings that the claimed expenses included personal use.

Father relies on his testimony and that of his accountant to argue that he adequately justified that the claimed telephone expenses were ordinary and necessary expenses for the farm operation. The magistrate, however, found father and his accountant to be inconsistent and not credible. And her finding that one-half of the total telephone expenses were "inappropriate or excessive" shows that she rejected father's and the accountant's testimony about the total amount of telephone expenses as not credible. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (deferring to district court's "implicit[]" credibility determination). Furthermore, our review of the record—including father's testimony—supports the magistrate's findings that father "deducted some of his personal phone expenses as business expenses" and "had no verification as to the actual amount." As a result, the magistrate did not err by concluding that father failed to meet his burden to establish the full amount of the telephone expenses were "ordinary and necessary expenses required for self-employment or business operation" and thus disallowing one-half the claimed telephone expenses. *See* Minn. Stat. § 518A.30.

8

*Depreciation Expenses*

Second, father argues that the magistrate overstated his self-employment income by disallowing a portion of his claimed depreciation expenses. A business's "ordinary and necessary expenses" specifically excludes "amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses." Minn. Stat. § 518A.30. The magistrate disallowed one-half of father's claimed depreciation expenses because father failed to establish what portion of the claimed depreciation was the accelerated component.

Father relies on the post-hearing declaration and the revised depreciation schedules, which were prepared by his accountant, to argue that the magistrate erred when disallowing his claimed depreciation expenses. He asserts that, based on the revised depreciation schedules, the magistrate should only have disallowed $4,706 of his claimed depreciation expenses for 2021 and $6,309 of his claimed depreciation expenses for 2022. We are unpersuaded.

The magistrate found that the accountant "misstated basic principles of accounting regarding appreciation" and failed to "initially disclose the accurate nature of the depreciation." The magistrate also found that father's revised depreciation schedules were still incomplete regarding the amount of accelerated depreciation and explained that "[t]he credibility of the incomplete information is unknown in light of [the accountant's] prior misstatements to the Court." We give great deference to the magistrate's credibility determinations. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). Given the magistrate's concerns about the accountant's prior misstatements related to depreciation—

9

concerns which are fully supported by the record—we are not persuaded that the magistrate erred in her treatment of father's depreciation expenses.

Moreover, the record supports the magistrate's findings that the accountant provided inconsistent and incomplete testimony about father's depreciation expenses, even in the revised depreciation schedules. In fact, father acknowledges on appeal—consistent with the magistrate's assessment—that the revised depreciation schedule still "includes an accelerated component of depreciation." "On appeal, a party cannot complain about a district court's failure to rule in [his] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question." *Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003), *rev. denied* (Minn. Nov. 25, 2003). Here, father was afforded multiple opportunities to clarify what portion of his claimed depreciation expenses was the accelerated component. Father did not do so. We therefore conclude that the magistrate did not err by concluding that father failed to meet his burden to prove that the full amount of the claimed depreciation expenses were "ordinary and necessary expenses" and by disallowing one-half the claimed depreciation expenses. *See* Minn. Stat. § 518A.30.

*Hedge-Loss Expenses*

Third, father contends that the magistrate overstated his self-employment income by disallowing a portion of his hedge-loss expenses. The magistrate determined that father failed to establish that the entirety of the hedge-loss expenses represented an ordinary and necessary expense for the farm operation and therefore disallowed one-half of his claimed hedge-loss expenses.

10

Father contends that he adequately justified that the hedge-loss expenses represented an ordinary and necessary expense. Father's argument relies on his testimony, but the magistrate was not required to accept his testimony if she did not find it credible. *See Kenney*, 963 N.W.2d at 224 ("[A] factfinder is not bound by witness testimony, even if uncontradicted, when there is reason to doubt the testimony."); *see also Varner v. Varner*, 400 N.W.2d 117, 121 (Minn. App. 1987) ("The finder of fact is not required to accept even uncontradicted testimony if the surrounding facts and circumstances afford reasonable grounds for doubting its credibility."). The record supports the magistrate's findings that neither father nor his accountant testified that hedging is a common practice or is necessary for his farming operation. Furthermore, father does not identify authority suggesting that hedge-loss expenses are an ordinary and necessary expense of farming. We therefore conclude that the magistrate did not err by concluding that father failed to meet his burden to demonstrate that the hedge-loss expenses were an "ordinary and necessary expense" and by disallowing one-half of the hedge-loss expenses as inappropriate or excessive for the purposes of calculating child support. *See* Minn. Stat. § 518A.30.

*Net Operating Losses*

Finally, father argues that the magistrate overstated his gross monthly income from the farm operation by including "net operating losses" reported on his tax returns in the calculation of his self-employment income. The magistrate determined that father failed to establish a basis for treating the net operating losses as an ordinary and necessary business expense and thus included the amount of those losses—$354,472 in 2021 and $348,533 in 2022—in her calculation of father's self-employment income.

11

Father contends that the magistrate erred because the net operating losses do not fall within the definition of self-employment income under section 518A.30 and therefore should not have been included in the calculation. We agree that the magistrate's treatment of his net operating losses—in essence, treating the amount of those losses as income to the farm operation—is inconsistent with section 518A.30 and unsupported by the record.

As noted above, section 518A.30 provides that income from self-employment "is defined as gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment." Minn. Stat. § 518A.30. Unlike the other challenged expenses—telephone, depreciation, and hedge loss—there is no evidence in the record that the net operating losses were a business expense for father's farm operation. The net operating losses were included as a separate line item on father's tax return, unrelated to business expenses. We therefore agree with father that the magistrate erred by treating the net operating losses as an expense that father was required to justify when calculating his self-employment income. *See* Minn. Stat. § 518A.30. Furthermore, the magistrate did not find—and the record does not suggest—that the net operating losses represented a gross receipt of the farm operation. *See id.* As a result, we conclude that the magistrate erred by including the net operating losses in the calculation of father's self-employment income. We also note that removing the net operating losses from the calculation of father's self-employment income has a significant effect on the father's gross monthly income, reducing it by approximately $29,292 per month.

In sum, we conclude that father has not shown that the magistrate erred by disallowing one-half of father's claimed telephone, depreciation, and hedge-loss expenses

12

when calculating father's self-employment income. However, we conclude that the magistrate erred by including the net operating losses in father's self-employment income. We therefore conclude that the magistrate erred by finding that father's gross monthly income is $46,432 for child support purposes and remand for recalculation of the self-employment portion of his gross monthly income.

**B.      The magistrate's finding of father's estimated net monthly income is not supported by the record.**

In addition to calculating father's gross monthly income as $46,432, the magistrate also estimated father's net monthly income as $34,118.90. Father argues that the magistrate erred in estimating his monthly income.

At the outset, we note that the magistrate relied on father's estimated net monthly income to determine the parties' child-support obligations because that figure was more "conservative" than the gross monthly income calculated by the magistrate. In light of our conclusion that the magistrate significantly overestimated father's gross monthly income, the record does not support the magistrate's finding that father's estimated net monthly income is a more "conservative" number. Rather, the record supports the opposite. Therefore, remand is appropriate on that basis alone.

Furthermore, even setting aside the magistrate's characterization of father's net monthly income as a "conservative" estimate, we conclude that the magistrate's method of estimating father's income is not supported by the record. The magistrate estimated father's net monthly income based on father's "increase in net worth" and his monthly expenses. Although the record supports the magistrate's reasoning that father's monthly

13

expenses are reflective of his income, we conclude that the record does not support the magistrate's reliance on father's increase in net worth.[2]

To determine father's average monthly "increase in net worth," the magistrate looked at father's net worth in August 2008 and compared that number to his net worth in January 2021. The magistrate found that father's net worth increased by $3,270,046 during this time period. The magistrate used this amount to determine an average monthly increase in net worth, which the magistrate then included in the estimate of father's average net monthly income. The magistrate reasoned that the increase in net worth represented assets acquired from after-tax dollars (i.e. cash). But, as father contends, the record shows that a significant portion of his increased net worth is due to the passive appreciation of his existing long-term assets. For example, the record shows that $1,543,000—nearly half of the increase in father's net worth—is due to the passive appreciation of one farm property, rather than the acquisition of new assets. Accordingly, even under clear-error review, the record does not contain evidence supporting the magistrate's decision to treat father's increase in net worth as equivalent to after-tax dollars available to father to pay monthly child support. *See Kenney*, 963 N.W.2d at 222. The magistrate therefore clearly erred by relying on father's increase in net worth when estimating father's net monthly income and by finding that father's estimated net monthly income is $34,118.90.[3]

---

[2] Because we conclude that the magistrate erred in her method of estimating father's income, we do not reach father's argument that the magistrate erred by finding he is able to meet his monthly expenses.

[3] In estimating father's income, the magistrate relied on cases from this court affirming the decision to reject a self-employed parent's taxable income and instead estimate income

## II. The magistrate erred by calculating child support based on the 2022 child-support guidelines.

Father also argues that the magistrate erred by failing to apply the 2023 child-support guidelines. We agree. The 2023 child-support guidelines took effect on January 1, 2023. *See* 2021 Minn. Laws ch. 30, art. 10, § 65, at 562-72 (stating that relevant amendments of the child-support statutes went into effect on January 1, 2023). The child-support magistrate set the parties' child-support obligation in June 2023. Accordingly, the 2023 child-support guidelines govern the calculation of the parties' child-support obligations.

*Conclusion*

In sum, the magistrate erred by determining that father's child-support obligation is $1,250 per month under the 2022 child-support guidelines. As outlined above, we conclude that the magistrate overstated father's gross income by including net operating

---

based on record evidence. *See, e.g.*, *Roatch v. Puera*, 534 N.W.2d 560 (Minn. App. 1995) (affirming finding of income based on "business records, tax returns, expert testimony and an examination of the parties' lifestyles"); *Marx v. Marx*, 409 N.W.2d 526 (Minn. App. 1987) (affirming district court's decision to "reject appellant's taxable income and to instead estimate his income" based on the sum of annual wages from his business and interest income "less 25 percent for taxes and other deductions"). That caselaw was decided prior to the amendments to the child-support guidelines in 2005, under guidelines which required child-support obligations to be based on net income rather than gross income. *See* 2005 Minn. Laws ch. 164, §§ 7, at 1887-89; 16, at 1901; 29, at 1924-25. And as father identifies, those cases were decided prior to the supreme court's clarification that calculating a self-employed parent's gross income requires identification of gross receipts, costs of goods sold, and ordinary and necessary expenses. *See Haefele*, 837 N.W.2d at 713-14. As a result, it is not clear whether the pre-2005 caselaw supports a district court or magistrate's authority to "estimate" income rather than apply statutory definitions of income under the current child-support guidelines. Regardless, the magistrate had sufficient information to calculate father's gross income based on the statutory formula, as addressed above, and thus there is no need to estimate father's income.

losses and clearly erred in estimating father's net monthly income. We therefore reverse and remand for the magistrate to recalculate father's gross income as specified under sections 518A.29 and 518A.30 and in a manner consistent with this opinion. In determining the parties' presumptive child-support obligations, the magistrate shall use the 2023 child-support guidelines and may, in her discretion, reopen the record. After recalculating the parties' presumptive child-support obligations under the guidelines, the magistrate shall consider whether to adhere to or deviate from the guidelines based on the factors in Minnesota Statutes section 518A.43, subdivision 1 (2022), as required by that statute. We express no opinion as to whether a deviation is appropriate in this case.

**Reversed and remanded.**