**In re the Marriage of Tammy LUDWIGSON, n/k/a Elkin, Petitioner, Respondent,**

**v.**

**John LUDWIGSON, Appellant.**

**No. C0–01–1616.**

Court of Appeals of Minnesota.

March 19, 2002.

---

444

Mary Catherine Lauhead, St. Paul, for respondent.

Gary A. Weissman, Minneapolis, for appellant.

Considered and decided by CRIPPEN, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

CRIPPEN, Judge.

In this child support modification proceeding, appellant-obligor John Ludwigson questions the determination of his income and the child support magistrate's decision to abandon a discount based on appellant's visitation time with his children. Appellant also disputes the magistrate's authority to award $3,000 in attorney fees deemed necessary for the participation of respondent Tammy Elkin in this proceeding. Finally, respondent asks this court to review the magistrate's decision denying her entitlement to a dependency exemption unless her gross monthly income exceeds $1,500. Neither party having identified matters of evidence or law entitling them to relief on appeal, we affirm.

## FACTS

Appellant John Ludwigson and respondent Tammy Elkin divorced in 1995, and the trial court placed with respondent custody of their three minor children, who in 2002 will be ages 10, 14, and 16. As part

of the divorce judgment, appellant was entitled to claim all three dependency exemptions until respondent "becomes employed," when she would be entitled to claim the youngest child as a dependent. In 1996, incident to respondent's petition to move her children to California, the parties stipulated that appellant's support obligation would decrease by 25% during the summer months to provide for appellant's increased summer visitation. Thus, appellant's monthly support obligation became $1,288.70.

After moving back to Minnesota in March 2001, respondent petitioned the court to increase appellant's support obligation. Appellant, in turn, moved the court to reinstate his entitlement to claim all three of the tax-dependency exemptions, as respondent had claimed one dependant in 1998, 1999, and 2000. With cost-of-living adjustments, appellant's monthly payment at the time of the hearing in May 2001 would have increased to $1,521.

The child support magistrate's order, subsequently ratified by the trial court, concluded that appellant's current net monthly income was $5,724.42, representing a substantial change in circumstances and justifying an increase in monthly guideline support to $2,004. The order did not provide the previously enjoyed 25% reduction for the summer months premised on time the children spend with appellant. In addition, the magistrate awarded respondent $3,000 in need-based attorney fees. Finally, the order determined it appropriate that respondent claim a tax-dependency exemption only when she earned at least $1,500 per month for nine months of the year.

## ISSUES

1. Was it error to determine that appellant has net income for child support purposes of $5,724.42?

2. Was it error to abandon a prior determination, premised on a stipulation, which reduced appellant's child support obligation to account for increased visitation?

3. Is a child support magistrate empowered to award need-based attorney fees?

4. Was it error to construe the judgment to prohibit respondent's tax-dependency exemption claim unless her net monthly income reached a set threshold?

## ANALYSIS

### 1.

■ Appellant contends initially that the finding on his income stems from a miscalculation of his monthly benefits, determined from a pay stub ending March 31, 2001, that states his gross weekly wages as $1,923.08. Multiplying that number by 52 weeks in the year and dividing by 12 months, appellant concludes that his monthly wage, a preliminary consideration in calculating his income, should be $8,333.35, more than $500 less than the figure shown in the magistrate's exhibit. In addition, appellant argues that his net-income calculation erroneously included business-expense reimbursements and a nonexistent healthcare benefit.

■ This court will reverse a trial court's order regarding child support modification "only if we are convinced that the court abused its broad discretion" and reached a "conclusion that is against the logic and the facts on [the] record." *Gully v. Gully,* 599 N.W.2d 814, 820 (Minn.1999) (alteration in original) (quotation omitted). The standard for reviewing a child support magistrate's decision is the same as it would be if the trial court had made the

decision. *Brazinsky v. Brazinsky*, 610 N.W.2d 707, 710 (Minn.App.2000). Findings on net income for child support purposes "will be affirmed on appeal if those findings have a reasonable basis in fact and are not clearly erroneous." *State ex rel. Rimolde v. Tinker*, 601 N.W.2d 468, 470 (Minn.App.1999).

Both to the magistrate and to this court, appellant asserts that, to calculate his correct annual gross income, the basis of evidence must be the weekly gross of $1,923.08 that is shown on appellant's 3/31/01 pay stub. But the income calculation appellant disputes has another basis in fact, which is evident in an exhibit respondent submitted to the magistrate on the subject showing both the 3/31/01 pay stub and respondent's related calculation of net income. The gross monthly income figure—$9,426.67 [1]—used by the magistrate, represents exactly one-third of the "Medicare base" gross income to date ($28,280) reported on appellant's pay stub for the period through the end of March 2001.[2] Using this gross income figure, the magistrate applied appropriate deductions and correctly found a net income of $5,724.42. The record permits this calculation, and there is no evidence to suggest that this calculation of gross income—one-third of $28,280—included any excludable reimbursements.

Respondent contends that the magistrate's income calculation is also justified because, as the magistrate noted, appellant never disputed the calculation. It is true, as appellant points out, that he offered into evidence a calculation premised on his weekly salary. But it is also true, as the magistrate's finding suggests, that appellant never offered any evidence to refute the calculation of his monthly income as one-third of the reports of accumulated income shown on his 3/31/01 pay stub.[3] The magistrate's findings on income are not contradicted by any evidence of record.

■■■ Appellant contends that his alternate calculation of his net monthly income would produce a child support award that is insufficient to permit modification of the 1996 order. Child support may be modified if the moving party shows a substantial change in circumstances that renders the existing support award unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(a) (2000). To establish a rebuttable presumption that the existing child support order is "unreasonable and unfair" the moving party may show a change in earning or needs of the party or the children that would result in payments at least 20% and $50 per month higher or lower than the current order requires. *Id.*, subd. 2(b)(1) (2000). Given the magistrate's determination of $2,004 for child support, even if adjusted for the summer visits,

---

1. Although the exhibit presented to the magistrate shows at one point gross monthly wages of $8,846.17, which appellant believes is erroneously calculated, it is clear that the determinative gross monthly income figure employed in subsequent calculations was $9,426.67. Significantly, the evidence also justifies using $8,846.17 as the determinative gross monthly salary, a sum that is one-third of the $26,538.50 earnings to date shown on the pay stub.

2. The pay stub shows a payroll year that began on December 24, 2000, a fact that may bear on the to-date reports on the stub, but the magistrate was given no evidence to indicate that this consideration was significant.

3. Appellant introduced another pay stub for the pay period later in April 2001, but nothing on the face of this stub contradicts the weight of the evidence shown by the pay stub ending March 31, 2001. Appellant contends that respondent concedes that his gross monthly income is $8,315.07, but this concession was in response to appellant's 2000 income and did not contradict the magistrate's calculation for 2001 income.

appellant's monthly obligation would still be $1,878.75—representing more than a 20% increase over the $1,521—and presumptively establishing a substantial change in circumstances.[4] Moreover, as respondent contends, the present calculation of appellant's net income includes a pension deduction of five percent of his gross income, a deduction that appellant never previously enjoyed. Finally, we observe appellant's error in assuming that if the total award were not increased by 20%, modification could not occur. While section 518.64 establishes a presumption for modification when the new award would change by 20% and $50, it does not proscribe modification in other circumstances. To the contrary, a court may determine whether other situations, involving lesser changes in income, warrant modification.

### 2.

█ Appellant contends that, however his child support obligation is calculated, it should be diminished by the 25% reduction during the summer months (when appellant would have more visitation time and thus less child support obligation). As already determined, the record supports the magistrate's determination that increases in appellant's income represent a substantial change in circumstances that compelled the magistrate to proceed in a redetermination of child support. *See, e.g.,* Minn.Stat. § 518.64, subd. 2(a)(1), (b)(1), (c)(1) (2000) (once a substantial change has been shown, which renders the prior support award unfair and unreasonable, the court must consider the needs of the child and the custodial parent, and if modification is warranted, determine the amount).

█ When determining the modified award, the magistrate was bound to apply current law, which compels disregard for time spent with a noncustodial parent. *See, e.g., Rogers v. Rogers,* 622 N.W.2d 813, 820–21 (Minn.2001) (announcing that the children's time spent with the noncustodial parent is not determinative of the support obligation). And it is evident that the magistrate expressly weighed the resources and needs of the parties as factors other than guidelines to support the award it made.

█ Appellant insists that this result is inappropriate because the summermonth discount was determined not just by a prior judgment but also by stipulation. But that stipulation anticipated modification if at a future time the parties live in "the same location." Moreover, a stipulation limiting child support is readily disregarded as against public policy. *See Aumock v. Aumock,* 410 N.W.2d 420, 421 (Minn.App.1987) (stating that the rights of minor children are not subject to determination through the bargaining process). There was also evidence in the stipulation to permit the magistrate's finding that the aim of the document was to "accommodate the fact that [respondent] was moving from Minnesota with the children." It is not evident that the stipulation had a primary goal of reducing appellant's support obligation.

Appellant contends that, with respect to the 1996 modification, the parties' circumstances have not changed in terms of the frequency of visits still occurring after the children have moved back to Minnesota. Respondent disputes this view of the facts, contending that the children currently spend fewer overnight visits with appellant and that the older boys—at 14 and 16—are apt to exercise fewer visits. We need not determine this dispute because, although

---

4. A 20% increase over the $1,521 that would have been appellant's monthly obligation absent the petition to modify is $1,825.20 per month.

the magistrate found a substantial change in circumstances, the visitation facts were not clearly developed below. And because of the change in appellant's income, a change in his child support obligation was appropriate.

### 3.

 Appellant argues that the child support magistrate lacked subject-matter jurisdiction to award respondent attorney fees for this child support modification.[5] Subject-matter jurisdiction is a legal question. *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn.2000). But an attorney-fee award under Minn.Stat. § 518.14, subd. 1 (2000), "rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn. App.1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999).

 The Expedited Child Support Process Rules provide that "[c]hild support magistrates have the powers and duties necessary to perform their role in the expedited child support process." Minn. R. Gen. Pract. 360.02. Specifically, magistrates may award costs and fees as a sanction for bad-faith motions. *See, e.g.,* Minn. R. Gen. Pract. 367.05, subd. 4 (noncompliance with discovery order); Minn. R. Gen. Pract. 371.04, subd. 6 (bad-faith motions to correct clerical mistakes); Minn. R. Gen. Pract. 372.05, subd. 7 (bad-faith motions for review). Appellant argues that, because the rules specifically provide for sanction-based fee awards, the supreme court must have excluded a magistrate's authority to award need-based attorney fees. But this argument takes too little regard for the concept of "necessary" determinations, which is adopted in rule 360.02. And appellant does not explain why a magistrate should have less authority in awarding fees than a trial court confronted by a child support modification petition of an indigent party. *See, e.g., Brazinsky v. Brazinsky*, 610 N.W.2d 707, 710 (Minn.App.2000) (stating that the authority of a child support magistrate in establishing, modifying, and enforcing child support in the expedited child support process is the same authority a trial court has with respect to child support outside the process); *Lappi v. Lappi*, 294 N.W.2d 312, 316 (Minn.1980) ("The trial court has broad discretion in awarding attorneys fees to ensure that a party can protect his or her rights and interests.") (citation omitted). Moreover, the trial court has the power to grant need-based attorney fees, and it implicitly granted the fee award by affirming the magistrate's order.[6]

 Appellant also argues that the court did not make specific findings to justify an attorney-fee award. But a court does not always need to make separate findings to award attorney fees based on need. *See, e.g., Gully v. Gully*, 599 N.W.2d 814, 820, 825–26 (Minn.1999) (stating that under section 518.64 an award of attorney fees rests almost entirely within the court's discretion and a fee award is proper if the court reasonably finds need

---

**5.** Respondent contends that appellant did not raise this issue below and thus cannot raise it on appeal. But the issue of whether a court has subject-matter jurisdiction may be raised at anytime. *Marzitelli v. City of Little Canada,* 582 N.W.2d 904, 907 (Minn.1998).

**6.** Under Minn.Stat. § 518.14, subd. 1 (2000), the court shall award attorney fees, costs, and

disbursements to enable a party to bring a child support action, if it finds (1) that the fees are necessary for the good-faith assertion of a party's rights and will not add to the length and expense of the proceeding; (2) that the other party has the means to pay; and (3) that the needy party does not have the means to pay them.

of one party and ability to pay by the other). Here, the magistrate found that (1) respondent had no net monthly income from her self-employment; (2) respondent was unemployed for purposes of assigning the income-tax deduction for their children; (3) respondent did not have the ability to pay all of her attorney fees and costs; and (4) appellant did have the ability to pay respondent's fees and costs.

### 4.

■■■ Respondent argues that the magistrate erred in requiring that she earn at least $1,500 per month for nine months in order to claim a tax-dependency exemption. She contends that the stipulated judgment does not establish any "minimum" income prerequisite when it provides, "[i]n the event [respondent] becomes employed, [respondent] is entitled to claim the minor child * * * on her tax returns every year * * *." She asserts that neither the parties' stipulation nor the relevant statute mandates a threshold for "employment" before she becomes eligible to receive the tax exemption. *See* Minn.Stat. § 518.551, subd. 5(b)(f) (2000) (defining self-employment income). And she points to her 1995 tax year, when she reported only $200 of yearly income and yet was permitted to declare one child as a deduction. Moreover, respondent claims that appellant has not proved his need for three tax exemptions and that the court had to make best-interest findings before awarding appellant all three exemptions.

■■■ The allocation of federal-tax exemptions is within the trial court's discretion. *Crosby*, 587 N.W.2d at 298. A court may amend a child support order when there has been a substantial change of circumstances. Minn.Stat. § 518.64, subd. 1 (2000). In addition,

Interpretation of a divorce decree that is ambiguous or uncertain on its face and,

because of its language, is of doubtful meaning or open to diverse constructions, may be clarified by the tribunal that ordered it.

*Mikoda v. Mikoda*, 413 N.W.2d 238, 241 (Minn.App.1987) (citations omitted). And "[o]n appeal, the trial court's construction of its own decree has great weight." *Palmi v. Palmi*, 273 Minn. 97, 104, 140 N.W.2d 77, 82 (1966). The language of the 1995 order lacks clarity and fails to define either the kind of employment or the minimum earnings that would qualify respondent for the exemption. Although she argues that the magistrate's $1,500 requirement amounts to a modification of the stipulated judgment, the magistrate merely interpreted and clarified the trial court's prior order. The same trial court that ordered the decree subsequently ratified the magistrate's interpretation of it. Nothing in the records suggests that the magistrate abused its discretion in determining that respondent's "employment" does not qualify her for the tax exemption without the occurrence of a minimum level of earnings.

■■■ Respondent also disputes the magistrate's specific income-threshold requirement, but this determination was well within the magistrate's discretion. *See id.* (explaining that a court may interpret its prior decree). It is true that in 1995, respondent made only $200 and yet was permitted to claim an exemption. But it is also true that respondent worked as a registered nurse and that the exemption award would often accompany the receipt of taxable income. It is evident that the magistrate's income-threshold requirement is based on respondent's work experience and that nothing in the judgment states that respondent's current husband's income may be considered.

Respondent also appeals what she views as the magistrate's sua sponte action in determining her eligibility for an exemption claim. But the magistrate dealt with a specific motion of the kind when appellant moved for clarification of respondent's entitlement to the exemption. Similarly, respondent raised the exemption issue herself by asking the magistrate to award her permanently one exemption every year and another one during alternate years.

Appellant questions whether self-employment income, as opposed to wages, constitutes income for purposes of the stipulated judgment. He suggests that all of respondent's income should be disregarded because it is not derived from actual wages. The magistrate did not abuse judicial discretion by interpreting income as taxable income, which is a reasonable income concept.

Finally, appellant argues that if the $1,500 threshold is appropriate, he is entitled to retroactive use of the exemptions from 1998 through 2000. Conceding that the change might be difficult to implement for prior tax years, appellant suggests altering the future award to recoup past exemptions. But the magistrate, in rejecting retroactive application, was exercising discretion just as it did in setting respondent's $1,500 threshold. It is not evident that the magistrate erred by putting the parties on a clearer footing for the future.

### DECISION

The evidence supports the magistrate's calculation that appellant's net monthly income is $5,724.42. Thus, under the statutory guidelines, appellant's monthly support obligation is 35% of that amount, or $2,004, as the magistrate found. The magistrate also did not err in abandoning the 25% reduction based on increased summer visitation, as increased parenting time does not determine a noncustodial parent's support obligation. Moreover, there was no abuse of discretion in the award of need-based attorney fees. Finally, it was not error to construe the divorce judgment as awarding to respondent a tax-dependency exemption only when she earns $1,500 per month.

**Affirmed.**