In re Kris Lynn **EISENSCHENK**, n/k/a Kris Lynn Gruenes, Petitioner, Appellant,

v.

Timothy James **EISENSCHENK**, Respondent.

No. C2–03–343.

Court of Appeals of Minnesota.

Sept. 9, 2003.

Paul A. Jeddeloh, Jeddeloh & Snyder, P.A., St. Cloud, MN, for appellant.

Greg Engel, St. Cloud, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge, TOUSSAINT, Chief Judge, and SHUMAKER, Judge.

## OPINION

HALBROOKS, Judge.

On appeal from the district court's review of a child support magistrate's ruling, appellant challenges the district court's refusal to rule that the magistrate lacked jurisdiction over respondent's motion for support from appellant. Appellant also challenges the propriety of attributing income to her, the amount of income attributed to her, and the district court's decision to make her support obligation effective as of the date of a prior stipulated order giving respondent custody of the parties' children. Because the magistrate had jurisdiction and because the district court did not make findings unsupported by the record or otherwise abuse its discretion in addressing the amount of appellant's support obligation, we affirm those determinations by the district court. Because the district court did not adequately explain why it made appellant's support obligation effective as of the date of the stipulated order, we reverse and remand that aspect of the district court's decision.

## FACTS

The May 1997 judgment dissolving the parties' marriage awarded appellant Kris Gruenes sole physical custody of the parties' four children and set respondent Timothy Eisenschenk's monthly support obligation at $585 per month. After the dissolution, appellant remarried and lived on her new husband's farm with their two children, and the parties' four children.[1] A stipulated January 30, 2002 order temporarily awarded respondent physical custody of the parties' four children and suspended his support obligation while he had custody. The stipulated order also stated that if respondent wanted support from appellant, he could seek support in the expedited child-support process.

When respondent later sought support from appellant, a IV–D child-support file was open in appellant's name but not in respondent's name. Although the record is not fully developed on the point, respondent initially sought support in the expedited child-support process, apparently assuming that the magistrate had jurisdiction to address his request for support either because of the existence of appellant's IV–D file or the existence of the provision in the January 30, 2002 stipulated order stating that respondent could seek support in the expedited child-support process (or both). While a hearing on respondent's motion was set for August 9, 2002, the magistrate continued that hearing.

At the rescheduled hearing on September 12, 2002, respondent's attorney stated that respondent had applied for IV–D services. The magistrate heard testimony from appellant regarding her income and addressed the merits of the parties' support dispute. Appellant sought review of

---

1. At the time of the hearing, appellant was pregnant and due to have a third child with her second husband in April 2003.

the magistrate's decision in the district court. She argued, among other things, that the magistrate lacked jurisdiction to hear the case. The district court rejected this argument, noting that the case had been referred to the expedited child-support process by the stipulated order. The district court denied appellant's motion to dismiss for lack of jurisdiction and upheld the magistrate's determination of appellant's support obligation. The court also concluded that the matter should be considered an establishment of support rather than a modification of support and ordered the support obligation to begin on January 30, 2002, the date that respondent gained physical custody of the children.

## ISSUES

1. Did the district court err in ruling that the child support magistrate had jurisdiction to address support?

2. Did the district court abuse its discretion in attributing income to appellant?

3. Did the district court err in making appellant's support obligation effective as of the date of the stipulated order?

## ANALYSIS

### I.

After the legislature directed the supreme court to create an expedited process for addressing certain types of child-support matters, the supreme court promulgated the Expedited Child Support Process Rules. *See* Minn.Stat. § 484.702 (2002) (providing legislative authority for supreme court to create expedited child-support process); Minn. R. Gen. Pract. 351–79 (rules for expedited child-support process). Here, respondent's motion was heard in the expedited child-support process. On appeal, appellant argues that the expedited process lacked subject-matter jurisdiction to hear respondent's motion.

■ The existence of subject-matter jurisdiction is a legal question, which appellate courts review de novo. *Odenthal v. Minn. Conference of Seventh–Day Adventists,* 649 N.W.2d 426, 434 (Minn.2002); *see Ludwigson v. Ludwigson,* 642 N.W.2d 441, 448 (Minn.App.2002) (reciting this rule in context of expedited child-support process). Child-support matters that are not "IV–D cases" "may not be conducted in the expedited [child support] process." Minn.Stat. § 484.702, subd. 1(b); *see* Minn. R. Gen. Pract. 353.01, subd. 3 (stating certain types of cases "shall not be conducted or decided in the expedited process[,]" including "non-IV-D cases"). A "IV–D case" is

> a case where *a party* has assigned to the state rights to child support because of the receipt of public assistance as defined in section 256.741 or has applied for child support services under title IV–D of the Social Security Act, United States Code, title 42, section 654(4).

Minn.Stat. § 518.54, subd. 14 (2002) (emphasis added); *see also* Minn. R. Gen. Pract. 352.01(f) (stating "IV–D case" is "any proceeding where *a party* has either (1) assigned to the State rights to child support because of the receipt of public assistance as defined in Minn.Stat. § 256.741 (2000), or (2) applied for child support services under Title IV–D of the Social Security Act, 42 U.S.C. § 654(4) (1994). 'IV–D case' does not include proceedings where income withholding is the only service applied for or received under Minn.Stat. § 518.6111 (2000)." (emphasis added)). Thus, under the statute, for a "IV–D case" to exist, "a party" must have "assigned" his or her right to receive support to the state or "applied for" the requisite child-support services. Because the statute refers to "a party" (i.e., either party), the fact that the party who assigned rights or applied for support services is

the party *from whom* support is sought, is not fatal to the existence of a IV–D case. *See Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn.1989) (stating "[w]here on its face or in application a statute's meaning is clear, there is no room for construction").

In determining whether a "IV–D case" exists here, we note that this case involves two avoidable flaws that are commonly found in cases arising out of the expedited child-support process. First, the magistrate generically, without further explanation and in what is apparently a form order, stated that jurisdiction in the expedited child-support process was appropriate "pursuant to Minn.Stat. § 484.702, subds. 1 and 3." While Minn.Stat. § 484.702, subd. 1(f), adopts the definition of "IV–D case" in Minn.Stat. § 518.54, subd. 14, neither the documents the parties submitted to the magistrate nor the magistrate's order address whether chapter 518's definition of "IV–D case" was satisfied (or address whether there was some other basis for jurisdiction in the expedited child-support process). We note that a fuller treatment of the jurisdictional question by the parties or the magistrate at this stage of the proceeding might have avoided a significant part of the subsequent litigation.

Second, when the parties did focus on the jurisdictional issue during review of the magistrate's decision in district court, the parties simply submitted letters to the court, trading nonspecific, undocumented assertions regarding the sequence of events leading up to the magistrate's ruling rather than submitting documents showing the existence of jurisdiction in the expedited child-support process (e.g., an assignment to the state by one of the parties of that party's right to receive support). Because the appellate courts do not get the IV–D file, the parties' failures to put the relevant IV–D documents into the district court file means that those documents are not part of the record on appeal. *See* Minn. R. Civ. P. 110.01 (defining record on appeal as documents filed in district court). We note that not including the relevant documents in the district court file renders review of jurisdictional issues (and possibly other issues as well) unnecessarily complicated, and risks otherwise avoidable reversals and remands.

■ Here, the only things that the parties' letters allege with any particularity are that (a) appellant opened a IV–D case on an unspecified date and that it stayed open until (at least) August 9, 2002; (b) respondent initially served his motion in June 2002; (c) on August 9, 2002, the magistrate continued the hearing set to address respondent's motion; (d) after the continuance, the county told respondent it would (at some future point not specified in the relevant letter) close appellant's IV–D file; (e) respondent procured the forms necessary to open a "IV–D case" in his own name, filled them out, and provided them to his attorney on August 11, 2002; (f) the continued hearing occurred on September 12, 2002, at which time respondent's attorney told the magistrate that respondent had applied for IV–D services; (g) respondent's IV–D papers were filed on September 26, 2002; and (h) a IV–D file was opened in respondent's name on October 1, 2002. The record shows that the magistrate's order was signed and filed on October 4, 2002, and October 9, 2002, respectively. For the reasons set out below, we conclude that, on the unique facts presented by this peculiar case (and the less than fully developed record), the magistrate had jurisdiction to address respondent's motion.

First, the record shows that at least one party to this support dispute had a IV–D file open, and hence that the expedited

child-support process had jurisdiction to address respondent's motion, when (a) respondent's motion was made; (b) the case was originally heard (and continued); (c) the decision was issued; and (d) the decision was filed. Second, but for the continuance requested by appellant, respondent's motion would have been heard at a time when the record undisputedly shows that appellant's IV–D case was still open. Third, although the county's reasons for its stated intent to close appellant's IV–D file are not explicitly identified, it appears that the reason appellant's IV–D file was to be closed was because she no longer received support from respondent. To rule that the fact that a party no longer is entitled to receive support requires an automatic closing of that party's IV–D file could result in temporary "gaps" in the jurisdiction of the expedited child-support process where custody is modified and one party's right to support ends before the other party completes the requisite IV–D documentation.[2] Lastly, because the record does not show whether or when the county actually closed appellant's IV–D file, that file may have been open until (or even after) the county opened respondent's IV–D file.[3]

## II.

The child support magistrate found appellant's monthly income to be equal to the amount it found to be respondent's monthly income and set appellant's support obli-

gation at the guideline amount for that income. The district court affirmed these rulings, and appellant now challenges them. We review a district court's affirmance of a magistrate's order for an abuse of discretion. *Davis v. Davis*, 631 N.W.2d 822, 826 (Minn.App.2001).

### A. Propriety of Attributing Income to Appellant

Income may be imputed to or estimated for a child-support obligor either because the obligor is voluntarily unemployed or underemployed, or because it is impracticable to determine the obligor's actual income. *See* Minn.Stat. § 518.551, subd. 5b(d) (2002) (addressing imputed income where obligor is voluntarily unemployed or underemployed); *Gorz v. Gorz*, 552 N.W.2d 566, 569 (Minn.App.1996) (noting that, in addition to imputing income to voluntarily unemployed or underemployed support obligor, income may be imputed to obligor when obligor's income is otherwise "impracticable to determine" (quotation omitted)). Here, appellant testified that she and her second husband signed a premarital agreement (PMA) stating that appellant had no interest in her second husband's business or in the income generated by that business. The district court, however, noted that the PMA was not entered into evidence and that there might be a problem with the enforceability of a PMA

2. We note that such a gap in the jurisdiction of the expedited child-support process would be likely to occur if the parties stipulated to one or more issues (e.g., change of custody from child support "recipient" to support "obligor" and termination of "obligor's" existing support obligation) but had to litigate another issue (e.g., amount of support to be paid by the former support "recipient").

3. Because we resolve the jurisdictional issue based on the existence of a IV–D file, we need not address the parties' disputes regarding whether their January 2002 stipulation con-

ferred jurisdiction on the expedited support process or whether the district court's January 2002 order adopting that stipulation validly referred the support question to the expedited child-support process. We have doubts about both asserted bases for jurisdiction, however. *See* Minn. R. Gen. Pract. 353.02, subds. 1, 2 (addressing referral of questions to expedited support process); *Hemmesch v. Molitor*, 328 N.W.2d 445, 447 (Minn.1983) (addressing ability to confer subject-matter jurisdiction by stipulation).

with the terms described by appellant. *Cf.* Minn.Stat. § 519.11 (2002) (addressing premarital agreements); *McKee–Johnson v. Johnson*, 444 N.W.2d 259, 265 (Minn. 1989) (same). Appellant also testified that she is ignorant of her current family's financial situation, that she is a full-time homemaker and performs no work for her current husband's business, that her current family has no income and no budget, that she does not know how much money she spends out of the joint checking account she shares with her current husband, and that she receives no income from the family business. The district court specifically found each of these assertions to be not credible. The district court further stated that appellant's alleged "poverty and total financial ignorance is completely disingenuous" in light of $583,000 in revenue "available to [appellant] and her current [husband]" from her current husband's business, that appellant's "lack of cooperation with the Court in its attempt to make a reasonable determination of her financial circumstances reflected bad faith on her part[,]" and that "[i]t was reasonable and equitable to impute a portion of the marital income to [appellant] in an amount equal to [respondent's net monthly income.]"

 Questions of witness credibility and whether a party acts in good faith are questions on which appellate courts defer to the district court. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) (stating appellate courts defer to district court credibility determinations); *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn.1985) (stating whether party acts in good faith is, essentially, a credibility question). Here, the district court determined that appellant was not credible when she testified that she did not work for and receive remuneration from her current husband's business and that she acted in bad faith by attempting to preclude an accurate estimate of the amount of the income that should be attributable to her. This determination shows that the district court attributed income to appellant because it was impracticable to determine her actual income, rather than because she was voluntarily unemployed or underemployed.[4] *See Gorz*, 552 N.W.2d at 569.

In estimating appellant's income, the district court (a) contemplated the possibility of imputing an income to appellant of 150% of the federal minimum wage (apparently under Minn.Stat. § 518.551, subd. 5b(e)), but rejected the idea, stating "it is apparent to the Court that [appellant] enjoys substantially greater financial resources than 150% of minimum wage"; (b) noted that the business of appellant's current husband showed a loss for tax purposes; (c) added back to the tax-loss figure amounts for depreciation, mortgage-interest expense, and capital gains, and arrived at a positive "income" figure for the business; (d) determined that it was "reasonable and equitable" to impute to appellant a portion of the business's income equal to respondent's gross monthly income; (e) noted that this amount was less than 24% of the estimated "income" figure calculated for the business of appellant's current hus-

4. Minn.Stat. § 518.551, subd. 5b(e) (2002), creates a presumption that a party is not voluntarily unemployed or underemployed for periods that a party is "physically ... incapacitated." Citing this provision, appellant argues that, in attributing income to her, the district court ignored her "physical disability" due to her pregnancy. Because the district court's attribution of income to appellant was not based on appellant being voluntarily unemployed or underemployed (indeed, the district court made no finding that appellant was voluntarily unemployed or underemployed), we need not address whether appellant's pregnancy constitutes "physical incapacitation" under the statute.

band; and (f) set appellant's support obligation at the guideline amount for a monthly net income figure derived from the gross income attributed to appellant.

When addressing child support, the income of an obligor's spouse is not to be included in the obligor's net monthly income and the financial circumstances of the obligor's spouse are not to be considered. Minn.Stat. § 518.551, subd. 5(b)(1) (2002) (spouse's income); Minn.Stat. § 518.64, subd. 2(c)(1) (2002) (spouse's financial circumstances); *cf. Sherburne County Soc. Servs. v. Riedle,* 481 N.W.2d 111, 112 (Minn.App.1992) (stating "[w]hether a source of funds is income for purposes of determining a person's child support obligation is a question of law"). Arguing that determination of her income by referring to the revenue of her current husband's business violates these concepts, appellant challenges the finding of her net monthly income. This argument, however, assumes that the PMA is enforceable. Moreover, regardless of whether the PMA is enforceable, because the district court rejected as not credible appellant's assertions that she does not perform services for, and is not paid by, the business, at least some of the business's revenue is attributable to appellant.

The fact that appellant may not receive a regular paycheck from the business is not fatal to this conclusion. Appellant testified that her current family's entire household living expenses are written off as business expenses by her current husband's business. While "income" is generally defined in terms of a periodic payment to a person, for child-support purposes it also includes "in-kind payments received

by the obligor in the course of employment, self-employment, or operation of a business if the payments reduce the obligor's living expenses." Minn.Stat. § 518.551, subd. 5(b)(1) (requiring inclusion of in-kind payments in support obligor's income); Minn.Stat. § 518.54, subd. 6 (2002) (defining income as "periodic payment"). Thus, on this record, we cannot say that appellant has shown that the district court abused its discretion by attributing income to her.

**B. Propriety of Amount of Income Attributed to Appellant**

◼ Appellant challenges the amount of income attributed to her, noting that it was determined based, in part, on consideration of respondent's monthly income. The record shows, however, that respondent's income was neither the only, nor the dispositive, consideration in finding appellant's net monthly income. The record shows that (a) appellant submitted no credible financial information; (b) the district court functionally found that appellant provided services for her current husband's business; (c) appellant admitted that the business paid her living expenses; (d) the district court found that appellant acted in bad faith by attempting to preclude the court from estimating the amount of income attributable to her; (e) the district court noted the possibility of attributing income to appellant at 150% of the minimum wage but rejected that possibility because "it is apparent" that she enjoyed "substantially greater financial resources";[5] (f) the district court examined the financial information provided regard-

---

**5.** To the extent appellant argues that any income imputed to her should have been at a rate of 150% of the minimum wage under Minn.Stat. § 518.551, subd. 5b(e), we reject that argument. The statute states that, in certain circumstances, the court "may" impute income at 150% of the minimum wage. "May" is permissive. *Compare* Minn.Stat. § 645.44, subd. 15 (2002) (stating " '[m]ay' is permissive") *with* Minn.Stat. § 645.44, subd. 16 (2002) (stating " '[s]hall' is mandatory").

ing the business of appellant's current husband; and (g) the court attributed an income to appellant that it noted was less than 24% of what the district court deems the business's gross income to be. While the record support for the income figure attributed to appellant is not conclusive, a major reason for the limited support was appellant's failure to provide any credible evidence regarding her financial status. *Cf. Doering v. Doering,* 629 N.W.2d 124, 132 (Minn.App.2001) (discussing affirmative duty to disclose information that is present for parties to dissolution), *review denied* (Minn. Sept. 11, 2001). On appeal, a party cannot complain about a district court's failure to rule in her favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question. *See Tuthill v. Tuthill,* 399 N.W.2d 230, 232 (Minn.App.1987) (reciting this rule in maintenance-modification context); *Taflin v. Taflin,* 366 N.W.2d 315, 319 (Minn.App.1985) (reciting this rule in support-modification context).

■ Appellant also argues that the district court violated Minn.Stat. § 518.551, subd. 5f (2002), by setting her support obligation without considering the children she has with her current husband. That statute presumes that the appropriate child-support obligation for a support obligor who has children in multiple families is the guideline amount. *See id.* (stating "[t]he needs of subsequent children shall not be factored into a support guidelines calculation" and listing considerations for determining whether to deviate from the guideline-support obligation). Thus, the crux of appellant's complaint is that her support obligation was not set in an amount that deviated from the guideline amount. To set a support obligation in an amount deviating from the guideline

amount, the district court must consider the various financial and other factors listed at Minn.Stat. § 518.551, subd 5f(1)-(4). Because appellant failed to produce any credible evidence of her financial circumstances, however, even if the statute did apply here (which, for purposes of this appeal we assume, but do not concede), appellant was not entitled to a deviation from the guideline support amount. *See Tuthill,* 399 N.W.2d at 232; *Taflin,* 366 N.W.2d at 319.

On this record, given the lack of credible financial information produced by appellant, her attempts to stonewall any meaningful investigation of her actual financial status, and the fact that the amount imputed to her is less than 24% of the business's gross income, we cannot say that appellant showed that the amount of income found attributable to her is clearly erroneous. *See Ludwigson,* 642 N.W.2d at 446 (stating findings of net monthly income for support purposes are not altered on appeal unless clearly erroneous).

### III.

■ Appellant argues that the district court should not have made her support obligation retroactive to the January 30, 2002 stipulated order. Where support was reserved, this court observed that "[g]enerally, where no prior order to pay child support exists, it is improper to give a support order retroactive effect." *Davis v. Davis,* 631 N.W.2d 822, 827 (Minn.App. 2001). Here, regarding support, the stipulated January 30, 2002 order stated that if respondent "[s]hould ... desire to seek child support[,]" he could seek it in the expedited child-support process. Because the stipulated order did not contemplate immediate support payments from appellant and made any payment of support by appellant contingent on respondent seeking support from her, the stipulated order

functionally reserved appellant's support obligation. Thus, the general rule articulated in *Davis* is applicable. The district court's reason for not applying the general rule was that respondent had had custody of the children since the stipulated order without receiving any support. This reasoning, however, merely recites the facts that will exist in most, if not all, cases where support is reserved. Therefore, it is an insufficient reason to not apply the general rule. We reverse the district court's determination that appellant's support obligation is effective as of the date of the stipulated order and remand for the relevant provisions of the order to be adjusted accordingly.

## DECISION

Because the district court correctly determined that the expedited child-support process had jurisdiction in this case, we affirm the district court's determination on that point. Because appellant did not show that the district court abused its discretion in attributing income to her or that it clearly erred in determining the amount of income to be attributed to her, we affirm those aspects of the district court's ruling as well. Because the district court erred in making appellant's support obligation effective as of the date the stipulated order, however, we reverse that portion of the district court's decision and remand for the district court to make the necessary alterations in its order.

**Affirmed in part, reversed in part, and remanded.**