*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0266**

In re the Marriage of:
Jennifer Lee Hedberg, petitioner,
Appellant,

vs.

Benjamin Carl Hedberg,
Respondent,

County of Chisago, intervenor,
Respondent.

**Filed November 2, 2015
Affirmed in part, reversed in part, and remanded
Bjorkman, Judge**

Chisago County District Court
File No. 13-FA-14-169

Ryan L. Kaess, Kaess Law, LLC, St. Paul, Minnesota (for appellant)

Benjamin Hedberg, North Branch, Minnesota (pro se respondent)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant-mother challenges an order establishing child support, arguing the district court clearly erred in finding that she is voluntarily underemployed and

miscalculated respondent-father's parenting time. Because the record supports the district court's finding of voluntary underemployment, but does not support its calculation of parenting time, we affirm in part, reverse in part, and remand.

**FACTS**

Appellant Jennifer Hedberg and respondent Benjamin Hedberg were married in 2004 and have two minor children. The parties' marriage was dissolved in September 2014 pursuant to a stipulated judgment awarding joint legal and physical custody and reserving the issue of child support. Under the judgment's parenting-time schedule, the children spend eight days with mother and six days with father every two weeks. The schedule also grants each parent holidays and birthdays on an alternating annual basis and two weeks of vacation with the children each year.

In October 2014, the county moved to establish child support on mother's behalf. At the child-support hearing, the parents testified about the nature and extent of their employment, income and expenses, and parenting time. Mother testified that for the past decade she has worked part-time to help care for the children, but acknowledged that she had the opportunity to work full-time in her current job. Father testified that he is self-employed, operating a flooring business. He stated that his actual parenting time exceeds the amount provided in the parenting-time schedule because he occasionally takes time off of work to watch the children at mother's request. He explained that in the last year he had done this over spring break and the day before Thanksgiving.

At the conclusion of the hearing, father's attorney asserted that mother is voluntarily underemployed and income should be imputed to her consistent with full-time

2

employment. Counsel also argued that while the parenting-time schedule awards father 43% of the parenting time, based on the holiday schedule and the flexible arrangement that father described, his actual parenting time exceeds 45%. Mother responded that the parenting-time schedule incorporates holidays and breaks and accurately reflects father's parenting time. She also argued that while father occasionally exercised parenting time when it was not scheduled, she has done likewise.

After finding that mother is voluntarily underemployed, the child support magistrate (district court) determined that mother has potential monthly income of $6,140, which exceeds father's adjusted monthly income by $1,908. The district court also found that because father receives additional parenting time during the annual spring and Christmas school breaks, his parenting time was "slightly more than 45%." Accordingly, the district court ordered mother to pay $287 per month in child support.[1]

Mother moved for review, asserting that the district court miscalculated father's parenting time. The district court denied the motion, explaining that the 156 days provided in the parenting-time schedule along with ten additional days during "Spring vacation, Winter break, and MEA" resulted in father having 45.5% of the parenting time. Mother appeals.

## DECISION

A district court has broad discretion in determining child support and will not be reversed absent an abuse of discretion. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.

---

[1] The district court also ordered father to contribute to the cost of childcare and health insurance. Neither party challenges these aspects of the order.

1984).  The district court abuses its discretion by misapplying the law or setting support that is against logic and the facts on record.  *Gully v. Gully*, 599 N.W.2d 814, 820 (Minn. 1999); *Schallinger v. Schallinger*, 699 N.W.2d 15, 23 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005).  We review a district court's findings of fact for clear error, *see Ludwigson v. Ludwigson*, 642 N.W.2d 441, 446 (Minn. App. 2002), and conclusions of law de novo, *Guyer v. Guyer*, 587 N.W.2d 856, 858 (Minn. App. 1999), *review denied* (Minn. Mar. 30, 1999).

**I.    The district court did not clearly err in finding that mother is voluntarily underemployed.**

If a parent is voluntarily underemployed, the district court must calculate child support "based on a determination of potential income."  Minn. Stat. § 518A.32, subd. 1 (2014).  A parent is "rebuttably presumed" to be able to work "full time," which is defined, with certain exceptions, as working 40 hours per week.  *Id.*  A parent is not voluntarily underemployed if her employment status is (1) temporary and will lead to increased income, (2) based on a bona fide career change that outweighs the adverse effect of the diminished income on the child, or (3) due to mental or physical incapacitation or incarceration.  *Id.*, subd. 3 (2014).  Whether a parent is voluntarily underemployed is a factual finding, which we review for clear error.  *Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009).

Mother contends the district court clearly erred in finding that she is voluntarily underemployed based solely on her admitted ability to work additional hours if she wished to do so.  We disagree.  At two points during her testimony, mother agreed that

4

she has the ability to work more than 30 hours a week in her current job. She also testified that she worked full-time for the first eight years of her career, but chose to reduce her work schedule before she married father to "prepare for family and to take care of the children."[2] This testimony demonstrates that mother has both the opportunity and the capacity to work full-time. And she provides no legal authority for her assertion that her own testimony regarding her ability to work full-time cannot support a finding of voluntary underemployment. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection."). On this record, we conclude that the district court did not clearly err in finding that mother is voluntarily underemployed and thus imputing potential income to her.

**II. The record does not support the district court's calculation of father's parenting time.**

A child-support order must "specify the percentage of parenting time granted to or presumed for each parent." Minn. Stat. § 518A.36, subd. 1(a) (2014). This percentage is defined as "the percentage of time a child is scheduled to spend with the parent during a calendar year according to a court order." *Id.* Parenting time may be calculated based on

---

[2] A district court "may consider" whether a parent has foregone full-time employment to care for children when determining whether a parent is voluntarily underemployed. *See* Minn. Stat. § 518A.32, subd. 5 (2014). But mother does not advance this argument on appeal so we do not consider it. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (noting that issues not raised in briefs are waived).

the number of overnights a child spends with a parent, or by some other method "if the parent has significant time periods on separate days where the child is in the parent's physical custody . . . but does not stay overnight." *Id.* Once an obligor's parenting-time percentage has been established, it is used to calculate a downward parenting-expense adjustment, which accounts for expenses the obligor might incur while caring for the children. *See* Minn. Stat. §§ 518A.34(b)(6), .36, subd. 1(a) (2014); *see also Hesse v. Hesse*, 778 N.W.2d 98, 102 (Minn. App. 2009).

Here, the parenting-time schedule is based on overnights; mother's parenting-time percentage is 57% and father's is 43%. But the district court concluded that father's parenting time actually exceeds 45% because he receives ten additional parenting days each year during spring and Christmas breaks and over the MEA weekend. Mother asserts that the record does not support this calculation. We agree with mother.

We are unable to discern from the record any support for the district court's determination that father has 45.5% of the parenting time. First, the parenting-time schedule, which the district court expressly relied on, does not indicate the length of the spring and Christmas breaks, and there was no testimony on this point. Second, the parenting-time schedule states that these two breaks are to be divided evenly between the parties. And the MEA weekend is subject to the annual alternating schedule used for all other holidays. In short, the even division of these times in the parenting-time schedule is inconsistent with the district court's finding that father received extra parenting time by virtue of those school breaks.

6

The only other record evidence that could be construed to support the 45.5% parenting-time calculation—father's testimony—is also insufficient. Father testified that he took the children for a few days during spring break and the day before Thanksgiving at mother's request. But this testimony does not speak to parenting time during Christmas break or MEA, which the district court explicitly referenced. And father's testimony reflects informal, minor modifications of the parenting-time schedule rather than the type of established arrangement that could serve as the basis for calculating parenting time. *See Hesse,* 778 N.W.2d at 103 (explaining that child-support determinations are to be based on the amount of time a parent is scheduled to be with the child, not the amount of time actually spent with the child).

In sum, there is insufficient evidence to support the district court's determination that father has 45.5% of the scheduled parenting time. And because the district court relied on this erroneous calculation to set child support, we conclude mother's child-support obligation reflects clear error. Accordingly, we reverse and remand for recalculation of the parties' scheduled parenting-time percentages and child-support obligation. On remand, we note that because it is undisputed that mother's scheduled parenting-time percentage exceeds 50%, additional findings would be necessary to support an appropriate parenting-expense adjustment as the statutory-adjustment formulas do not address the situation where an obligor has the majority of the parenting time. *See* Minn. Stat. § 518A.36, subds. 2, 3 (explaining that parenting-expense adjustment is determined based on the "percentage of parenting time allowed to the

obligor," and providing formulas for calculating the adjustment when obligor has 50% parenting time or less).

**Affirmed in part, reversed in part, and remanded.**