*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0439**

In re the Custody of WNM:
Peter Edward Marxen, petitioner,
Appellant,

vs.

Janet Ruth Jacobs,
Respondent.

**Filed November 30, 2015
Reversed and remanded
Bjorkman, Judge**

Scott County District Court
File No. 70-FA-11-3676

Laurie Mack-Wagner, Mack & Santana Law Offices, P.C., Minneapolis, Minnesota (for appellant)

Janet Jacobs, Lonsdale, Minnesota (pro se respondent)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges the denial of his motion to modify child support, arguing that the district court erred when it declined to deduct all of his depreciation expenses when calculating his self-employment income, and when it failed to impute additional income

to respondent.  Because the district court clearly erred in calculating appellant's self-employment income, we reverse and remand.

## FACTS

Appellant Peter Marxen and respondent Janet Jacobs are the parents of W.N.M., born September 24, 2009.  The parties share joint legal and physical custody of W.N.M. and father is obligated to pay $771 per month in child support under a 2012 child-support order.  Father is self-employed as a farmer and landscaper.  He also receives income from a rental property.  Mother is a self-employed house cleaner.

In September 2014, father moved to modify child support, asserting that the existing award was unreasonable and unfair because his income, when adjusted to reflect depreciation expenses from his farming and landscaping businesses, had substantially decreased.  As evidence of this, father submitted the report of certified public accountant Thomas Harjes, who analyzed father's business income, expenses, asset purchases, and depreciation expenses between 2010 and 2013.

Harjes calculated father's average combined income from all sources to be $92,011.  Harjes noted that father's farming and landscaping businesses are "capital intensive in nature," requiring "significant annual expenditures" to repair or replace machinery.  During the analyzed period, the two businesses' combined average annual asset purchases net of sales was $81,659.

Harjes's report also reflects the accelerated depreciation deductions the businesses have taken for tax purposes between 2010 and 2013, as well as straight-line depreciation expenses for the same period in the amount of $65,983.  Harjes explained that the

2

businesses' "consistent pattern of equipment purchases," shows that the claimed depreciation expenses are sound because they are similar to and representative of the actual asset purchases. Accordingly, Harjes opined that straight-line depreciation should reduce father's average annual income to $26,028, a significant reduction from the $85,638 income figure upon which the existing child-support order is based.

The parties appeared for a hearing on the modification motion in late October. At the conclusion of the hearing, the district court indicated that it had concerns regarding the parties' purported monthly cash flow, "since both parties work in nontraditional businesses, where it is difficult to ascertain their actual incomes." The district court ordered both parties to provide bank records from the period of March 1, 2014 through August 31, 2014.

After receiving the additional information, the district court denied father's modification motion, finding that father's claimed depreciation expenses are not "credible as an accurate reflection of his cash flow" or "an accurate reflection of income after payment of ordinary and necessary expenses." Based on its review of father's bank statements, the district court found that his primary account "carried an average month ending balance of $12,423." The district court also implicitly questioned the credibility of father's claim that he had "extremely limited financial means," noting that he had "persisted in multiple appeals and motions to modify and has hired attorneys, financial experts and private investigators all with the goal of reducing his child support obligation."

3

Notwithstanding these findings, the district court reduced father's annual income to $80,334, based in part on figures included in Harjes's report. The district court reached this figure by subtracting what it found to be father's "claimed depreciation" expenses, $69,982, from his average asset expenditures, $81,659. The district court then concluded that the $11,677 reduction only decreased father's income by 7%, which was not a substantial change in circumstances warranting a child-support modification. Father appeals.

## D E C I S I O N

A district court is afforded broad discretion to determine child support. *Stevens Cty. Soc. Serv. Dep't ex rel. Banken v. Banken*, 403 N.W.2d 693, 697 (Minn. App. 1987). The district court abuses this discretion when it reaches a clearly erroneous conclusion that is against logic and the facts in the record. *Id.* Determinations of income and expenses for child-support purposes are findings of fact, which we review for clear error. *Ludwigson v. Ludwigson,* 642 N.W.2d 441, 446 (Minn. App. 2002); *Rutten v. Rutten*, 347 N.W.2d 47, 51 (Minn. 1984).

I.  **We decline to consider father's argument that additional income should be imputed to mother because he did not raise the issue in the district court.**

Father asserts that mother is voluntarily underemployed, and potential income should be imputed to her for purposes of child support. *See* Minn. Stat. § 518A.32, subd. 1 (2014) (stating if a parent is voluntarily underemployed, child support must be calculated "based on a determination of potential income"). But his modification motion is devoid of any argument that mother is voluntarily underemployed or that income

4

should be imputed to her on that basis. The affidavits accompanying the motion focus almost entirely on the depreciation-expenses issue. And while father did argue that mother's claimed income is suspiciously small, he did not assert that this required the district court to impute potential income to her pursuant to Minn. Stat. § 518A.32, subd. 1. Because father did not raise this issue before the district court, we do not consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

## II. The district court clearly erred in calculating father's self-employment income.

When determining a self-employed parent's income, gross receipts are reduced by the "ordinary and necessary expenses required for self-employment or business operation." Minn. Stat. § 518A.30 (2014). Excluded from ordinary and necessary expenses are "amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, . . . or any other business expenses determined by the court to be inappropriate or excessive." *Id.* "The person seeking to deduct an expense, *including depreciation*, has the burden of proving, if challenged, that the expense is ordinary and necessary." *Id.* (emphasis added).

A district court must examine claimed depreciation expenses to determine whether they reflect true depreciation or simply depreciation for tax purposes. *Beltz v. Beltz*, 466 N.W.2d 765, 767 (Minn. App. 1991), *review denied* (Minn. Apr. 29, May 23, 1991). If the record contains support for legitimate depreciation deductions, the district court should consider them in determining net income. *Preussner v. Timmer*, 414 N.W.2d 577,

5

579 (Minn. App. 1987). A total disregard of depreciation expenses is reversible error. *Freking v. Freking*, 479 N.W.2d 736, 740 (Minn. App. 1992).

Father argues that the district court overstated his income by disallowing nearly all of his $65,983 straight-line depreciation expenses. This argument has merit. We first note that this is not a case involving a total disregard for a party's claimed depreciation expenses. The district court's order reflects that it considered and questioned several aspects of Harjes's report. The district court determined that father had used depreciation expenses to "dramatically reduce his reported income for tax purposes and he [sought] to do the same with his income for purposes of child support." After concluding that father's claimed straight-line depreciation expenses were not ordinary and necessary, the district court applied its own methodology—reducing father's self-employment income by the difference between annual asset expenditures and depreciation expenses.

We agree with father that the district court's calculations are fundamentally flawed. First, the district court used a depreciation figure of $69,982 that has no basis in the record. Rather, the straight-line depreciation figure in the record was $65,983, which appears in Harjes's report. Second, the district court's use of the difference between father's asset purchases and claimed depreciation expenses to calculate his self-employment income is logically unsound. Comparison of actual asset purchases and depreciation expenses merely provides a gauge of how closely claimed expenses correlate to capital investments and expenditures. The difference between the two figures is in no way probative of the extent to which specific depreciation expenses should be

considered ordinary and necessary business expenses. Moreover, it is problematic that the district court relied on father's depreciation-deduction figure to calculate his income even after it expressly found that the figure was not credible. Accordingly, remand is necessary to properly determine father's self-employment income.

For purposes of remand, we also note that several of the district court's expressed grounds for rejecting father's claimed depreciation expenses lack support in the record. For example, the district court found that father claimed 100% business use of his home and inappropriately depreciated the cost of home improvements. In fact, Harjes's report shows that these specific depreciation expenses related to the rental property, which Harjes excluded from his income calculation. The district court also noted that assets were being depreciated on a seven-year schedule—shorter than the useful life of much of the equipment. But there is little evidence in the record indicating the actual useful life of the depreciated equipment. Finally, the district court discredited father's assertion that he has limited financial means based in part on its finding that his average monthly bank-account balances were approximately $12,000. This finding is not clearly erroneous, but it does not account for or address evidence in the record that a certain portion of that balance represented businesses loans and receipts, which father could not rely on to pay his personal expenses or child support.

In sum, because the district court's income calculation contains clear error, we reverse and remand for the district court to determine father's income consistent with the evidence.

**Reversed and remanded.**