**In re the Marriage of Gerald WAGSTROM, petitioner, Appellant,**

v.

**Kathleen A. WAGSTROM, Respondent.**

No. C2–86–661.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Review Denied Nov. 26, 1986.

Peter H. Watson, Spicer, Watson & Carp, Minneapolis, for appellant.

Joseph F. Schmidt, Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Gerald Wagstrom appeals from a trial court order modifying the maintenance provision of a 1974 dissolution judgment.[1] We affirm.

## FACTS

Appellant Gerald Wagstrom and respondent Kathleen Wagstrom were married in 1959. Four children were born of their marriage which was dissolved in 1974. At the time of the dissolution, respondent was 34 years old, employed part-time and earned $230 per month. She was employed for only a brief period during the marriage and not at all after 1976. She was in poor health during the marriage due to rheumatoid arthritis, chronic depression, anxiety neurosis and alcohol dependency. Appellant was employed by Control Data Corporation with a gross income of $19,200 per year at the time of the dissolution.

Respondent was granted custody of the parties' four children, as well as occupancy of the parties' homestead until the youngest child reached age 18. Appellant was required to make all payments on the homestead and to maintain it. The monthly house payment was $462. In addition he was ordered to pay support of $50 per child per month and maintenance of $100 per month.

In the dissolution decree appellant was awarded title to, and all interest in the homestead except for a $2,500 lien in respondent's favor. Appellant was to satisfy the lien when the parties' youngest child became 18. The decree did not specify a

---

1. This order is appealable pursuant to *Angelos v. Angelos,* 367 N.W.2d 518, 520 (Minn.1985).

termination date for maintenance or address the possibility of respondent's deteriorating health.

In 1976 respondent began receiving $314 per month in AFDC payments. Those payments continued through 1985. Appellant paid the $100 maintenance and $50 per child support payment to Hennepin County to be set off against the AFDC grant. He continued to make the monthly mortgage payment directly to the mortgage company.[2]

In 1984 the Social Security Administration classified respondent as disabled, finding she suffers from mixed connective tissue disease, of both systemic lupus rythematosis and rheumatoid arthritis, as well as from chronic depression, anxiety neurosis and a history of alcohol dependency. Her social security disability benefits are $325 per month.

Appellant remarried and lives in California. He owns a computer consulting business in partnership with his wife. In 1984 the partnership gross income was $170,922 with approximately $55,000 taxable income. Appellant's monthly living expenses are $2,705, which includes a monthly payment of $462 for the parties' Minneapolis homestead. Respondent's monthly expenses are $1,204.51, including an estimated $500 housing cost.

In September 1985, respondent moved for an order awarding her occupancy of the homestead at appellant's expense until she dies, remarries or voluntarily moves. Alternatively, she asked the court to increase maintenance from $100 to $800 per month. Respondent also requested attorney's fees, an order to restrain appellant from selling the home or evicting her and a trial on the

maintenance issue. Appellant then moved to terminate maintenance, for an award of attorney's fees and for an order requiring respondent to vacate the homestead.

In October 1985, a family court referee recommended denial of respondent's motions to remain in the homestead and to restrain appellant from evicting her. The referee also recommended increasing maintenance to $600 per month.

Appellant sought district court review of the recommendation to increase maintenance. Alternatively, he moved for enforcement of a 1977 California order purporting to reduce maintenance from $100 to $50 per month. Respondent sought review of the order denying her motion to continue residing in the homestead. Alternatively, she asked for $800 per month as maintenance and for appointment of a trustee to oversee maintenance payments from the proceeds of the sale of the house.

In February 1986, the trial court ordered appellant to pay respondent $600 per month maintenance beginning April 1, 1986, ordered respondent to vacate the parties' homestead, and denied respondent's motion to appoint a trustee. The parties agreed to sell the homestead and respondent had already vacated it by the time the order was issued.

In the findings supporting the modification order the trial court found that in 1974, appellant's gross income was $19,200 yearly. In 1984, his partnership gross income before deductions was $66,066, and after deductions was $55,053, of which $27,526.50 was attributable to appellant as his 50% interest. The remaining 50% was attributable to his wife, a partner in the business. The trial court found appellant's

---

2. Minn.Stat. § 518.551 reads in pertinent part:
   Subdivision 1. Payment to public agency. The court shall direct that all payments ordered for maintenance and support be made to the public agency responsible for child support enforcement so long as the obligee is receiving or has applied for public assistance. Amounts received by the public agency responsible for child support enforcement greater than the amount granted to the obligee shall be remitted to the obligee.

   The decree did not categorize the $462 mortgage payment as additional support or maintenance. The decree provision which permitted appellant to pay the mortgage payment directly to the mortgagee redounded to the benefit of both parties. Appellant protected his equity in the home and respondent was provided a rent-free residence.

monthly living expenses were $2,795, which includes $700 per month for combined short term debt, maintenance payments to respondent, and payments on the Minnesota homestead.

The court found respondent's monthly living expenses were $1,204.51 and that she receives $325 per month as supplemental social security if she lives away from the homestead. She no longer receives AFDC payments. In addition, the trial court adopted the Social Security Administration finding that respondent is disabled.

The trial court held that the 1977 California order did not expressly modify the Minnesota decree and thus does not modify appellant's support obligation under Minnesota law. Further, the trial court expressly held it had jurisdiction to modify the conditions under which respondent occupies the homestead considering it a form of spousal maintenance and/or child support, not a property division. The trial court determined, however, that it would be inequitable to further delay appellant from receiving the homestead, especially since no minor children reside there.

After considering appellant's increased earnings, his wife's income [3], both parties' necessary monthly living expenses and respondent's inability to obtain employment due to her progressively deteriorating physical condition, the trial court found there has been a substantial and material change in circumstances causing the original cash maintenance award to be unreasonable and unfair. It modified the maintenance provision from $100 to $600 per month.

## ISSUES

1. Did the trial court err in interpreting the 1974 judgment as providing for permanent maintenance?

3. The trial court may not take into consideration the income of appellant's present wife in establishing a maintenance award. Prior to August 1, 1986 such income was considered only in connection with child support. *See* Minn. Stat. § 518.64, subd. 2. Pursuant to statutory amendment effective August 1, 1986 this income is not to be considered even in connection with child support. 1986 Minn. Laws, ch. 406 § 8.

2. Did the trial court abuse its discretion in modifying appellant's maintenance obligation from $100 to $600 per month?

## ANALYSIS

### I.

The dissolution decree provided that appellant:

> pay to Respondent the sum of $100 per month as and for [maintenance] payable in installments of $50.00 on the 1st and 15th of each month following entry of Judgment, such payments to be made through the Hennepin County Department of Court Services, commencing 6–1–74.

Appellant argues that this language should not be interpreted as providing for permanent spousal maintenance. We cannot agree. Although appellant claims he fulfilled his obligation to respondent and his children by providing rehabilitative spousal maintenance for more than 11 years, there is nothing in the decree provision that would so limit maintenance payments.

The parties stipulated to the terms of the dissolution decree in 1974. Both were represented by separate legal counsel. They freely agreed to the maintenance provision. Finally, even if the original judgment had not awarded permanent maintenance, the trial court would have had jurisdiction to entertain a motion brought by either party to modify maintenance during the period in which maintenance was actually in effect. Minn.Stat. § 518.64, subd. 1 (1984). *See also Crampton v. Crampton*, 356 N.W.2d 768, 770 (Minn.Ct.App.1984).

However, appellant's stated monthly expenses of $2,705.00 include such items as $900 per month rent, $400 per month food, and $300 per month short term debt expense. These items are attributable to both him and his present wife or to their business entity. We, therefore, find no error in the trial court's consideration of total family monthly income as it pertains to total family monthly expenses.

## II.

The trial court has broad discretion in awarding maintenance and will not be reversed on appeal absent a finding of clear abuse of that discretion. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982).

Minn.Stat. § 518.64, subd. 2 provides for modification of a maintenance award upon a showing of one or more of the following:

(1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.-72 to 256.87; or (4) a change in the cost-of-living for either party * * *, any of which makes the terms unreasonable and unfair.

Applying these standards to facts is within the trial court's discretion. *Bissell v. Bissell,* 291 Minn. 348, 351, 191 N.W.2d 425, 427 (1971).

■ Here, the trial court found that respondent cannot become gainfully employed because of her deteriorating physical condition and specifically included in its order the Social Security Administration finding that she was disabled. It determined appellant's earnings had substantially increased and respondent's income had decreased since entry of the original judgment. The trial court also found that respondent's needs had significantly increased, making the original order unfair. These findings have ample support in the record.

In 1974 appellant earned about $19,200 per year to support his entire household. Today his share of the family earnings is $27,000, a figure arrived at after deducting money paid into an Individual Retirement Account, depreciation and other business expenses. In contrast, respondent has lost the benefit of no-cost housing and now must pay rent which exceeds her $325 per month income. Although respondent was in poor health in 1974, she was 34 years old and able to work at least part time. Today she is 46 years old, has not held a job since 1976, and is classified as "disabled" by the Social Security Administration. The record shows her condition has deteriorated since 1974.

Perhaps even more compelling, however, is the context in which the court made its decision to increase maintenance. Appellant was seeking enforcement of that decree provision which would permit him full enjoyment of his ownership of the former homestead upon the payment of respondent's $2,500 lien and at such time as the parties' youngest child reached 18. Respondent resisted appellant's request and asked that she be permitted to remain in the homestead. The trial court ruled as follows on the issue of homestead occupancy:

This Court does have jurisdiction to modify the conditions pursuant to which respondent occupies the parties' homestead, said occupation being considered a form of spousal maintenance and/or child support, and not a division of property. Minn.Stat. § 518.64, Subd. 2; *Kerr v. Kerr,* [309 Minn. 124] 243 N.W.2d 313 (1976). * * * This Court finds it inequitable, however, to further delay petitioner's receipt of property that was awarded to him pursuant to the June 4, 1974, Judgment and Decree, especially where no minor children remain in the homestead. Consequently respondent shall be ordered to vacate said homestead by April 1, 1986.

Since respondent's use of the parties' homestead was a part of the maintenance and support provision of the decree, and not part of the property division, the trial court could have delayed the sale almost indefinitely. It chose not to do so, however, and instead permitted appellant to realize his equity in the home without further delay.

Finally, we note that prior to the trial court's modification of maintenance, appellant paid $462 per month on the homestead mortgage, performed upkeep and repair on that home, paid $100 per month maintenance and $50 per month per child support. (The two youngest children became 18 in July, 1985.) Of course, appellant now has no obligation to provide a home rent-free to

respondent or to maintain and repair the home for her benefit. Further, the parties have agreed that the home is to be sold. At that time appellant will have no further expenses in connection with it. Therefore, rather than an increase to appellant of $500 per month ($600 per month maintenance rather than $100) the net increased burden for him is negligible, if indeed there is an increased burden at all.[4]

## DECISION

The court correctly determined the maintenance award under the dissolution decree as a permanent one. Where the record shows a significant change in circumstances since the original dissolution judgment, the trial court did not abuse its discretion in modifying the maintenance award.

Affirmed.

---

4. The record does not reflect exact amounts spent by appellant on upkeep and repair of the home while occupied by respondent.