*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0603**

Laura M. Engelhart, n/k/a Laura Hoss, petitioner,
Respondent,

vs.

Robert J. Engelhart,
Appellant.

**Filed December 28, 2015
Affirmed
Kirk, Judge**

Dakota County District Court
File No. 19-FX-08-002319

Laura Hoss, Eagan, Minnesota (pro se respondent)

Edward F. Rooney, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Willis, Judge.\*

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

On appeal in this spousal-maintenance dispute, appellant argues that the district court (1) overstated his income; (2) improperly considered his current wife's income in

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

calculating his income available to pay spousal maintenance; (3) erred in denying his motion for a new trial on the basis that his 2013 tax returns were newly discovered evidence; and (4) erred in denying his motion for a new trial because respondent submitted an allegedly misleading document suggesting that appellant had income from an undisclosed business. We affirm.

## FACTS

In 2010, appellant-husband Robert J. Engelhart and respondent-wife Laura Hoss were divorced by a stipulated judgment and decree. The judgment and decree awarded husband the business PB Exchange, Inc. (PBE), and wife permanent spousal maintenance of $4,700 per month.

In April 2012, husband moved to modify his spousal-maintenance obligation, alleging that his income had significantly declined because PBE was failing and that wife's reasonable monthly expenses had substantially decreased. In July 2012, the district court denied husband's motion, which was affirmed on appeal. *Engelhart v. Engelhart*, No. A12-1705, 2013 WL 2372164, at *3 (Minn. App. June 3, 2013).

In May 2013, while his appeal was pending, husband again moved the district court for a reduction of his spousal-maintenance obligation, on the grounds that his income from PBE had decreased even further and that wife's reasonable monthly expenses had decreased. After a delay for discovery and mediation, in October 2014, the district court reduced husband's monthly maintenance obligation to $3,600, a lesser reduction than husband requested.

2

On November 14, husband moved the district court for amended findings of fact with respect to its October order or, alternatively, for a new trial. In February 2015, the district court amended several findings and conclusions, but did not further reduce husband's spousal-maintenance obligation or grant him a new trial.

Husband appeals.

## DECISION

We review a district court's decision concerning modification of spousal maintenance for an abuse of discretion. *Hecker v. Hecker*, 568 N.W.2d 705, 709-10 (Minn. 1997). A district court abuses its discretion if it resolves the matter in a manner "that is against logic and the facts on record." *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). Modification of spousal maintenance is appropriate if a substantial change in circumstances makes the original amount unreasonable and unfair. Minn. Stat. § 518A.39, subd. 2(a) (2014). Changed circumstances can be established by showing a substantial increase or decrease in the gross income or need of either the obligee or the obligor. *Id.* The movant for spousal-maintenance modification bears the burden of demonstrating a substantial change in circumstances that renders the current maintenance amount to be both unreasonable and unfair. *Beck v. Kaplan*, 566 N.W.2d 723, 726 (Minn. 1997).

**I.      The district court's findings regarding husband's income are not clearly erroneous.**

We defer to a district court's findings of fact and will uphold them unless they are clearly erroneous. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002); *see* Minn. R.

3

Civ. P. 52.01 (stating that findings of fact shall not be set aside unless clearly erroneous). "Findings of fact are clearly erroneous where an appellate court is left with the definite and firm conviction that a mistake has been made." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation omitted). When determining whether a district court's findings are clearly erroneous, an appellate court views the record in the light most favorable to the court's findings. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). Also, appellate courts defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

At the time of the dissolution, husband's monthly salary from PBE was composed of a "base income of $11,000," and fringe benefits, including medical and dental insurance and an annual $6,000 flex-spending account cap. In June 2012, in support of his first motion to reduce his spousal-maintenance obligation, husband filed an affidavit stating that he was receiving interest income on a loan that he made to PBE. He reported receiving interest from PBE of $16,307 in 2010 and $14,423 in 2011.

In May 2013, husband filed an affidavit in support of his second motion stating that he received "$107,227 in salary/contractor income from" PBE and another business, Managed Services Inc. (MSI), in 2012, as well as "interest income from" PBE, and that he believed there were "some business losses." He explained that he lacked some figures because the corporate income tax returns had not been completed. Husband did not submit his 2012 personal tax returns to the court. He claimed that he was earning a monthly salary of $6,000 from PBE, was no longer working for MSI, and that he anticipated that his interest income would remain at approximately $1,300 per month.

4

In a supplemental affidavit filed in April 2014, husband described how PBE was struggling due to technology changes in the telecommunications industry and that he was in the process of ceasing its operations. He also stated that he had obtained new employment in January 2014 and was earning $8,000 per month. In his next supplemental affidavit, which was filed in July, husband reported income from PBE in the form of payments to him or on his behalf, credited against his loan to PBE. Because he was taking distributions from PBE rather than a salary in order to reduce his tax liability, he agreed to consider the payments as income for purposes of spousal maintenance.[1]

In its October 2014 order modifying husband's spousal-maintenance obligation, the district court found husband's current monthly income to be approximately $10,900, consisting of his salary, PBE interest income, and PBE loan payments. The district court repeatedly emphasized that the failure to provide the court with documentation negatively impacted his credibility with respect to his income. For example, husband had not provided his 2013 personal income tax returns, documentation of any 2013 interest income, documentation of his wife's 2013 income, or any PBE financials for 2014.

On appeal, husband first asserts that the district court erred in determining his income. Husband contends that: (1) other than suggesting that he received income from an undisclosed business, wife did not dispute his asserted income, and (2) the missing

---

[1] We note that, normally, where marital property awarded to a party produces a stream of payments, the payments are not considered in determining that party's ability to pay spousal maintenance to the extent that those payments represent the marital property that was awarded to the party in the dissolution judgment. *See Lee v. Lee*, 775 N.W.2d 631, 638-39 (Minn. 2009).

documents concerning husband's income were in wife's possession through discovery, not requested, or, with respect to the 2013 tax returns, not yet prepared.

Contrary to husband's assertion, the record reflects that wife consistently questioned husband's claimed income figures and his ability to meet his spousal-maintenance obligation. More importantly, it was not necessary for wife to question husband's income or to provide documentation, even that which she received in discovery, since husband carried the burden of proof. *See, e.g.*, *Zieman v. Zieman*, 265 Minn. 190, 192, 121 N.W.2d 77, 79 (1963); *Kielley v. Kielley*, 674 N.W.2d 770, 779 (Minn. App. 2004) ("'Unreasonable and unfair' are strong terms which place upon the claimant a burden of proof more than cursory."); *Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) (stating that a party who does not submit evidence to allow the district court to fully address a question may not complain that the court failed to rule in that party's favor), *review denied* (Minn. Nov. 25, 2003). "The finder of fact is not required to accept even uncontradicted testimony if the surrounding facts and circumstances afford reasonable grounds for doubting its credibility." *Varner v. Varner*, 400 N.W.2d 117, 121 (Minn. App. 1987). It was not clearly erroneous for the district court to question husband's credibility on the basis of his failure to submit basic financial information in support of his motions.

Husband next argues that the district court improperly took into account his income for all of 2013 instead of only his income since May 2013, when his maintenance modification motion was pending. However, the district court did not err in considering husband's income prior to the motion because he historically received much of his

income from a business that he owns, and it is therefore subject to manipulation. *See Fulmer v. Fulmer*, 594 N.W.2d 210, 213 (Minn. App. 1999) (stating that a district court may use earning capacity to measure income if it is either impracticable to determine an obligor's actual income or his income is "unjustifiably self-limited"); *Ferguson v. Ferguson*, 357 N.W.2d 104, 108 (Minn. App. 1984) ("[T]he opportunity for a self-employed person to support himself yet report a negligible income is too well known to require exposition.").

Finally, husband argues that the district court erroneously treated interest income from his loan to PBE as separate from loan payments from PBE, and that he received only "modest and irregular" loan payments in 2014. These arguments are also unavailing.

Until his November 2014 motion for amended findings, husband never asserted that he was no longer receiving interest payments or that he was receiving interest as part of each loan payment. *See Allen v. Cent. Motors*, 204 Minn. 295, 299, 283 N.W. 490, 492 (1939) (stating that an issue first raised in a motion for amended findings is "too late"); *Grigsby v. Grigsby*, 648 N.W.2d 716, 726 (Minn. App. 2002), *review denied* (Minn. Oct. 15, 2002). Further, the documentation of the payments against the loan reflects nothing regarding interest. The amount by which the loan balance was decreasing each month matches almost exactly the average monthly payments husband received,[2] which strongly suggests that he was receiving interest payments in addition to

---

[2] This pertains to the period of June 1, 2013, to December 31, 2013; the record does not contain information regarding 2014.

payments described as reducing principal. Further, in finding husband's non-interest loan income, the district court used only 2014 figures, which were significantly lower than those from 2013. The district court did not clearly err in including separate interest payments in husband's total income.

The district court reasonably declined to adopt husband's income figures in light of the evidence in the record and his failure to produce more complete financial information. We are not left with a "definite and firm conviction that a mistake has been made" with respect to husband's income. *Goldman*, 748 N.W.2d at 284.

## II. The district court did not err by taking the income of husband's current spouse into account in calculating his ability to pay spousal maintenance.

In considering a motion to modify spousal maintenance, the district court may regard the income of an obligor's current spouse as a source for meeting monthly expenses attributable to both the obligor and the current spouse. *Wagstrom v. Wagstrom*, 394 N.W.2d 841, 844 n.3 (Minn. App. 1986), *review denied* (Minn. Nov. 26, 1986).[3]

Husband provided a budget delineating the household expenses that he pays and those that his new spouse pays, which reflects that they pay approximately 75% and 25% of the total household expenses, respectively. Using the district court's income figures,[4] this distribution of expenses is proportional to their incomes.

---

[3] Notably, in considering a motion to modify child support, a district court "shall not consider the financial circumstances of each party's spouse." Minn. Stat. § 518A.39, subd. 2(d)(1) (2014). There is no such restriction relating to a motion to modify maintenance. *Id.*, subd. 2(d).

[4] The district court adopted husband's figures for his spouse's income.

8

Noting a lack of documentation and that some "expenses are shared at 2/3 and others at 3/4," the district court found it "more reasonable to consider [husband]'s entire household budget than to consider [his] self-apportioned budget." In calculating his income available to pay spousal maintenance, the district court combined the incomes of husband and his new spouse and subtracted their reasonable monthly expenses, which it found to be lower than claimed.

Husband argues that the district court erred in considering the contribution of his current spouse to household expenses because he delineated his share of expenses from her share. However, the district court was not obligated to accept husband's apportionment of expenses. Further, its findings reflect an expectation that his spouse pays approximately 43% of the household's reasonable monthly expenses, including taxes, for purposes of calculating funds available to pay spousal maintenance, which is reasonable on this record. In fact, because the amount of maintenance ordered is substantially lower than his household's monthly surplus, husband could still choose to pay the same percentage of household expenses relative to his wife as he claimed. Therefore, the district court did not clearly err by considering his current spouse's income in calculating his income available to pay spousal maintenance.

**III. The district court did not abuse its discretion in denying husband's motion for a "new trial" on the basis that his 2013 tax returns were newly discovered evidence.**

In his November 2014 motion, husband argued for a new trial on the basis that his 2013 tax returns were newly discovered evidence. Hearings on motions to modify spousal maintenance are "special proceedings," not trials under Minn. R. Civ. App. P.

9

103.03(g). *Huso v. Huso*, 465 N.W.2d 719, 720 (Minn. App. 1991). Thus, a motion for a new trial in a post-decree spousal-maintenance modification proceeding is not authorized, and an order denying such a motion is not appealable. *Id.* at 721. Even assuming it were, the district court did not err in denying husband relief.

Minn. R. Civ. P. 59.01(d) authorizes the district court to grant a new trial due to "[m]aterial evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial."[5] Generally, newly discovered evidence "must have been in existence at the time of trial but not known to the party at that time." *Swanson v. Williams*, 303 Minn. 433, 436, 228 N.W.2d 860, 862 (1975). "The primary consideration in determining whether to grant a new trial is prejudice." *Wild v. Rarig*, 302 Minn. 419, 433, 234 N.W.2d 775, 786 (1975). A district court's decision on a motion for a new trial is reviewed for abuse of discretion. *Halla Nursery, Inc. v. Baumann-Furrie & Co.*, 454 N.W.2d 905, 910 (Minn. 1990).

Husband never alleged that, at the time of the August 2014 hearing, he was unaware that his 2013 tax returns had not been completed and filed. At that time, husband did not indicate to the district court that he had not completed his 2013 tax returns or ask for time to submit them. Even in his affidavit in support of his motion for a

---

[5] On appeal, husband argues for a new trial under Minn. Stat. § 518.145, subd. 2(2) (2014), which authorizes a court to grant a new trial due to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under the Rules of Civil Procedure, rule 59.03." Because husband filed a timely motion for a new trial under Minn. R. Civ. P. 59.01 before the district court, on appeal we analyze the issue under that rule. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.") (quotation omitted).

new trial, husband did not explain why he failed to complete the returns by the hearing, state whether he had received an extension from the IRS, or state when he gave his accountant the materials to complete the returns. Moreover, the tax returns did not exist at the time of the hearing. *See Swanson*, 303 Minn. at 436, 228 N.W.2d at 862.

**IV.     The district court did not abuse its discretion in denying husband a "new trial" on the basis that wife offered into evidence an allegedly misleading document indicating that he had income from an undisclosed business.**

In an affidavit filed in June 2014, wife first alleged her belief that husband had an undisclosed interest in a business called "PB Exchange - Minnesota Trucking Company." She attached a document reflecting types of cargo hauled by a company identified this way, as well as an address, telephone number, and other limited information. In response, husband explained that PBE owns the truck to which the document referred, for its own use. He denied having an interest in any sort of trucking or transport business. Wife responded by submitting a screenshot of an "advertisement" describing "Pb Exchange" as a "Minnesota Transport Company," with contact information including husband's cellphone number.

In its order modifying maintenance, the district court noted the dispute and commented that "it is curious why there would be an online presence for a company that does not exist." In his affidavit following the order, husband attached a print-out of what he asserted to be the full webpage of the "advertisement" submitted by wife, arguing that it proves that PBE did not post the information because the advertisement invites the business to use the site as a "marketing platform."

11

Husband argues that the district court should have granted a new trial on the basis that wife submitted a deceptive document suggesting that he was engaged in an income-producing trucking business, when that was not the case. Again, such a motion is not authorized in these proceedings and an order denying it is not appealable. *Huso*, 465 N.W.2d at 721. Even assuming it were, the district court did not abuse its discretion in denying husband relief on this basis.

Minn. R. Civ. P. 59.01 authorizes a district court to grant a new trial due to, in pertinent part, "(a) [i]rregularity in the proceedings of the . . . prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial; (b) [m]isconduct of the . . . prevailing party; [or] (c) [a]ccident or surprise which could not have been prevented by ordinary prudence . . . ."[6]

Over three months had elapsed between wife's submission of the screenshot in July 2014 and husband's submission of the webpage print-out in November 2014, and differences between the two are plainly evident in the documents provided. Therefore, it is not clear that the webpage wife viewed contained the information husband asserts made her conduct purposefully misleading. Even assuming the print-out husband provided shows that PBE did not post the "advertisement" and that wife was aware of this, there could still be a transport company named Pb Exchange. Indeed, the original evidence submitted by wife appears to be from a different source.

---

[6] On appeal, husband cites Minn. Stat. § 518.145, subd. 2(3) (2014), which allows a new trial for "fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party." Because husband argued for relief under Minn. R. Civ. P. 59.01(a)-(c) at the district court, we analyze this issue under those provisions instead. *See Thiele*, 425 N.W.2d at 582.

Further, in making findings regarding husband's income contrary to his claims, the district court imputed no income to husband from the alleged undisclosed trucking business. Hence, its decision not to grant relief on this basis was reasonable and supported by the record. *See Dobrin*, 569 N.W.2d at 202.

**Affirmed.**